**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **CRIMINAL NO. PJM-10-0271** |
| **PATRICK FITZGERALD SWEENEY** | : | |
| | : | |
| **Defendant** | : | |

**...oOo...**

**GOVERNMENT'S CONSOLIDATED RESPONSE TO**
**DEFENDANT'S PRETRIAL MOTIONS**

The United States of America, by its undersigned counsel, and respectfully submits this

Consolidated Response in Opposition to the defendant's Motion to Exclude Evidence of Other

Crimes, Wrongs and Acts (Docket No. 16), Motion for Severance of Counts (Docket No.48), and

Motion to Suppress Physical Evidence Obtained as a Result of Constitutional Violations (Docket

No. 49).

**I.     BACKGROUND**

On May 19, 2010, the grand jury for the District of Maryland returned a single count

Indictment charging the defendant with distribution on heroin, the use of which resulted in death.

On August 8, 2011, a Superseding Indictment was filed which added a single count of possession

with intent to distribute heroin.  On March 12, 2012, a Seven-Count Second Superseding Indictment

was returned.  Count One charges the defendant with possession of heroin on March 23, 2009.

Count Two charges the defendant with distribution of heroin on March 23, 2009.  Count Three

charges the defendant with use of a communications device in furtherance of the distribution of

heroin.  Count Four charges the defendant with distribution of heroin between February 16, 2009,

and March 10, 2009.  Count Five charges the defendant with use of a communications device in

furtherance of the distribution of heroin during the same time period as Count Four.  Count Six charges the defendant with distribution of heroin in December of 2008.  Finally, Count Seven charges the defendant with use of a communications device in furtherance of the distribution of heroin.

When the Government provided discovery in this case, the Government advised the defendant that, pursuant to Rule 404(b), it might seek to introduce the following evidence:

1.  The defendant's 1997 conviction for possession of controlled substance-not marijuana, and the underlying evidence regarding that conviction;

2.  The defendant's possession, use, and acquisition of heroin with another individual  prior to the incident charged in the indictment; and

3.  The defendant's possession of various items containing heroin residue at the time of his arrest on May 21, 2010.

After the original Indictment was filed, the defendant filed a Motion to Exclude Evidence of Other Crimes, Wrongs and Acts.  As a result of the Second Superseding Indictment, on March 16, 2012, the defendant filed a Motion for Severance of Counts.  On March 16, 2012, the defendant also filed a Motion to Suppress Evidence Obtained as a Result of Constitutional Violations.  For the reasons set forth below, this Court should deny all of the defendant's motions.

## II.    FACTS

On March 23, 2009, at approximately 10:30 p.m., emergency personnel responded to a residence in Breezy Point, Maryland.  Upon arrival, Harrison Waite was found in his room in the basement, non-responsive.  Waite subsequently was declared dead at Calvert Memorial Hospital in Calvert County, Maryland.  An autopsy was performed, and the cause of death was determined to be heroin intoxication.

Waite's girlfriend and house mates provided information concerning Waite.  According to them, Waite arrived home during the late afternoon and was in good spirits and behaving normally. Waite and his girlfriend then went out to dinner.   On the way home, Waite advised his girlfriend that he had to pick up some pills from Sweeney for a co-worker.  They drove to Sweeney's parents house, where Waite met Sweeney.  Before meeting Sweeney, Waite took an empty pill bottle from his girlfriend and met with Sweeney.  Shortly thereafter, Waite returned to the vehicle.  Waite and his girlfriend returned to Waite's Breezy Point residence.  After watching a movie, the girlfriend left the room for a few minutes.  When she returned, Waite was asleep, face down, on the bed.  The girlfriend fell asleep and woke up about an hour later.  She noticed that Waite was not snoring and had not moved.  When she got up out of the bed, the movement caused Waite to roll over.  He was blue and vomit was coming out of him.  Efforts to revive him were unsuccessful.

A search of Waite's bedroom resulted in the recovery of some syringes, a spoon with heroin residue, and the same pill bottle referenced above, which was found to contain some pieces of heroin.   The house mates and Waite's girlfriend advised authorities that the defendant had introduced Waite to heroin.

A subsequent interview of Waite's co-worker also revealed that Waite was introduced to heroin by Sweeney.  In approximately June of 2008, Waite described his heroin use to his co-worker. Between June of 2008 and Waite's death, the co-worker and Waite obtained personal use quantities of heroin from Sweeney.  In  November of 2008, the co-worker personally met Sweeney. Between November of 2008 and Waite's death, the co-worker obtained heroin from Sweeney (both directly and through Waite) on several occasions (including once in December, and the last time approximately two to four weeks prior to Waite's death on March 23, 2009).  In addition to

providing heroin to Waite and his co-worker, Sweeney himself also used heroin. The co-worker further advised that on March 23, 2009, Waite was to obtain heroin from Sweeney for Waite and the co-worker to share.   The co-worker was contacted by Sweeney shortly after midnight on the evening of Waite's death and advised the co-worker that Waite had overdosed.  Telephone records corroborate the contact between Sweeney, Waite and the co-worker between June of 2008 and March 24, 2009.

### III.    Motion to Exclude Evidence of Other Crimes, Wrongs and Acts (Docket No. 16)

The defendant has moved to exclude any evidence of the defendant's prior use, possession or distribution of heroin.  The defendant argues this evidence is merely propensity evidence and should not be admitted under Rule 404(b).  The defendant's claim lacks merit.

The Government seeks to introduce evidence of Sweeney's use and familiarity with heroin through Sweeney's girlfriend and one of Sweeney's associates pursuant to Rule 404(b).[1]   The defendant's girlfriend (who is also Waite's mother) would testify that Sweeney had used heroin for a long time, that she had observed him injecting it in the bathroom, and that she had traveled with him several times to a bar off of Kenilworth Avenue near a Goodwill store to purchase heroin.  She also would testify that at the time of Waite's death, Sweeney was using heroin on a daily basis.  In

---

[1]   The Government had previously provided notice of its intent to introduce evidence of the defendant's arrest on April 18, 2007, and his subsequent conviction for possession of a controlled substance-not marijuana. The underlying conduct involved the possession of cocaine–specifically cocaine base. The Government does not intend to introduce evidence of this conviction unless the defendant's knowledge of cocaine becomes relevant.  In the event it becomes relevant, the Government will ask the court to determine its admissibility prior to presenting the evidence to the jury.

addition, an associate of Sweeney's would testify that between late 1994 and the associate's arrest in 2005, that the associate and Sweeney would obtain heroin together.[2]

Rule 404 (b) prohibits evidence of "'other crimes, wrongs, or acts'" solely to prove a defendant's bad character, but [s]uch evidence ... may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *United States v. Basham*, 561 F.3d 302, 326 (4th Cir.2009) (quoting Fed.R.Evid. 404(b)); *see also United States v. Mark*, 943 F.2d 444, 447 (4th Cir. 1991); *United States v. Queen*, 132 F.3d 991, 993 (4th Cir. 1997)(collecting cases and discussing Fourth Circuit's 404(b) jurisprudence). Rule 404(b) is a rule of inclusion, "admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." *United States v. Young*, 248 F.3d 260, 271-72 (4th Cir.2001) (internal quotation marks omitted); *Queen*, 132 F.3d at 993 ("all evidence of other crimes relevant to an issue in a trial, except which tends to prove only criminal disposition").

For prior bad acts to be admissible under Rule 404(b), the proffered evidence (i) "must be relevant to an issue other than character," such as identity or motive, *United States v. Siegel,* 536 F.3d 307, 318 (4th Cir.2008) (internal quotation marks omitted); "(ii) must be necessary to prove an element of the crime charged," *Queen,* 132 F.3d at 995, or to prove context, *see id.* at 998; and (iii) "must be reliable." *Id.* at 995. In addition, "the probative value of the evidence must not be substantially outweighed by its prejudicial effect," which "involves a Rule 403 determination," *United States v. Lighty,* 616 F.3d 321, 352 (4th Cir. 2010).

---

[2] As described above, Waite and his co-worker regularly obtained heroin from the defendant. The Government believes that this evidence is independently admissible as part of the same course of conduct, that this evidence provides the context for the charged offenses, and that this evidence thus is inextricably intertwined with the charged conduct. Alternatively, the Government also believes that it is admissible under Rule 404(b).

In order for evidence to be relevant to an issue other than general character, a sufficient nexus must exist between the prior act and the charged crime. *United States v. Johnson,* 617 F.3d 286, 297 (4th Cir.2010). Generally, the prior act should be "related in time, manner, place, or pattern of conduct." *Id.* (testimony linking defendant to a totally unrelated drug-dealing conspiracy that took place several years before the charged conspiracy was not "sufficiently related to the charged offense to render it adequately relevant to prove intent or knowledge"). The Fourth Circuit has found prior act evidence to be admissible in drug cases for a number of reasons unrelated to character, including intent, knowledge, and absence of mistake. *See United States v. Robinson* __ F.3d.__, 2011 WL 6009839 (4th Cir. 2011) (finding evidence of plastic bag containing crack from the defendant when he was arrested approximately three years earlier was properly admitted as there was a sufficient nexus in the manner and pattern of conduct to the charged offense which was based upon the recovery of a plastic bag of drugs from a vehicle operated by the defendant); *United States v. Sanchez*, 118 F.3d 192, 195 (4th Cir. 1997)(allowing testimony about a Defendant's prior drug dealings to prove his knowledge in the drug trade and to suggest the Defendant was an intentional participant). Here, the evidence of Sweeney's possession and use of heroin, as well as his obtaining heroin with an associate, are relevant to demonstrate his knowledge of and intent to possess heroin. In particular, his obtaining heroin with another a heroin user is probative of his intent to distribute or share heroin with Waite and Waite's co-worker. It also demonstrates an absence of mistake or accident in his actions.

Second, the evidence must be necessary to prove an element of the crime charged. *Queen*, 132 F.3d at 995. Evidence is considered necessary and admissible if it is an essential part of the crimes on trial or furnishes part of the context of the crime. *United States v. Masters*, 622 F.2d 83,

86 (4th Cir. 1980). In order to establish that the evidence is necessary, the government need not prove the evidence is critical to the government case. Rather, the focus is whether it is "probative of an essential claim or an element of the offense" *Queen*, 132 F.3d at 997. Significantly, courts must determine whether prior bad acts evidence is "necessary" under Rule 404(b) in "light of other evidence available to the government." *Queen*, 132 F.3d at 998 (internal quotation marks omitted). Thus, "as the quantum of other non-Rule 404(b) evidence available to prove an issue unrelated to character increases, the need for the Rule 404(b) evidence decreases." *Lighty,* 616 F.3d at 354.

In the instant case, the Government must prove that Sweeney knowingly possessed the heroin and that he distributed it or intended to distribute it. His knowledge and intent are essential elements of Counts One, Two, Four and Six. *See United States v. Rooks*, 593 F.3d 204, 211-212 (4th Cir. 2010)(court did not abuse its discretion when it admitted evidence of three fifteen-year-old drug convictions against a defendant charged with possession with intent to distribute because the convictions were relevant and necessary to prove intent).

Finally, the evidence must be reliable. *Queen*, 132 F.3d at 995. Here, the individuals will testify based upon their direct personal observations of the defendant and will be subject to extensive cross-examination by defense counsel.

Consequently, the only remaining issue is the question of admissibility under Federal Rule of Evidence 403– whether there is a genuine risk that the jury will be excited to irrational behavior by evidence of Sweeney's prior possession, use and acquisition of heroin and is such risk disproportionate to the probative value of the evidence. *Masters*, 622 F.3d at 87. In this case, as the alleged prior incidents involve evidence of the same caliber as the charged counts, the danger of prejudice is very low. How would a jury, after hearing evidence that Sweeney possessed and

distributed heroin on the dates charged in the Second Superseding Indictment– including one occurrence where the individual died as a result of using the heroin– be excited and inflamed by evidence that, on other occasions, he did the same?  In sum, the evidence detailed above is admissible under Federal Rule of Evidence 403 because the minimal danger, if any, of undue prejudice does not outweigh its probative value.  *Masters,* 622 F.2d at 87.

Since the proffered evidence is relevant, necessary, and reliable, it should properly be admitted under Federal Rule of Evidence 404 (b), and the defendant's motion to exclude such evidence should be denied.

## IV.   The Defendant's Motion For Severance of Counts

In his Motion For Severance of Counts, the defendant contends that each group of counts should be severed based upon the date– that there should be three trials, as follows: one for Counts One, Two and Three; a second trial for Counts Four and Five; and a third trial for Counts Six and Seven.  As support for this claim, the Defendant asserts that these three groups of counts are not "based on the same act or transaction or connected with a scheme or plan," and thus that a joint trial would unfairly prejudice him.  The defendant's claim is meritless.

The Federal Rules of Criminal Procedure provide two alternative mechanisms whereby a court may reevaluate the Government's decision to join various offenses in a single Indictment. First, a court considers whether various offenses were properly joined in one Indictment under the standards set forth in Federal Rule of Criminal Procedure 8(a).  Even if initial joinder of the offenses was proper pursuant to Rule 8(a), however, the court still retains discretion to order severance of particular counts under Federal Rule of Criminal Procedure 14(a) if it finds that the defendant would suffer "undue prejudice" from a single trial of all the allegations contained in the Indictment. *United*

*States v. Jamar*, 561 F.2d 1103, 1106, 1108 (4th Cir. 1977).  Under the circumstances present here, however, Rule 8(a) does not mandate, and Rule 14(a) does not support, the severance of this matter into three separate trials, as requested by the defendant– one trial for Counts One, Two and Three, a second trial for Counts Four and Five, and a third trial for Counts Six and Seven.

Rule 8(a) of the Federal Rules of Criminal Procedure controls whether counts may be joined in an Indictment.  Under that Rule, joinder is appropriate when the offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).  Rule 8 of the Federal Rules of Criminal Procedure permits joinder of offenses in the same Indictment to promote judicial economy.  *Zafiro*, 506 U.S. at 537.  The standard for joinder in an Indictment is not "onerous," but rather, "permit[s] 'very broad joinder. . . at the pleading stage.'" *United States v. Mackins*, 315 F.3d at 412 (*citing* 1A Charles Alan Wright, Federal Practice and Procedure § 141 (3d ed. 1999)).  Joinder of related charges are broadly permitted to avoid needless duplication of judicial proceedings, *United States v. Mir*, 525 f.3d 351, 356-57 (4th Cir. 2008). Joinder is proper as long as the joined offenses have a logical relationship to each other.  A logical relationship exists "when consideration of discrete counts against the defendant paints an incomplete picture of the defendant's criminal enterprise." *United States v. Cardwell,* 433 F.3d 378, 385 (4th Cir. 2005).

In this case, joinder of all seven counts was proper because two of the three circumstances articulated in Rule 8(a) have been met.  First, all of the counts are "of  the same or similar character." Counts One, Two and Three charge the possession with intent to distribute, the distribution of heroin, and the use of a communication device to further the distribution of heroin, all on or about March 23, 2098.  Counts Four and Five charge distribution of heroin and use of a

communication device to further the distribution of heroin between February 16, 2009, and March 10, 2009.  Counts Six and Seven charge distribution of heroin and use of a communication device to further the distribution during December of 2008.  A simple reading of the Indictment demonstrates that all of the counts are of the same character.  Second, the counts are all "connected with or constitute parts of a common scheme or plan."  These offenses occurred over approximately a four-month time period.  During this period, the defendant, a heroin user, supplied heroin to Harrison Waite and his co-worker, and the same telephones were used to coordinate each distribution.  *See United States v. Branch*, 537 F.3d 328, 341 (4th Cir. 2008) (finding episodes of drug possession with intent to distribute and drug distribution over a two month period were "certainly so related as to permit joinder under the broad scope of Rule 8(a)")

Moreover, the defendant has failed to establish the requisite "undue prejudice" required for a severance under Rule 14.  The party seeking severance bears the burden of demonstrating "a strong showing of prejudice." *United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir. 1984).  In *Branch*, the Fourth Circuit affirmed the trial court's denial of the severance, finding that the defendant's "conclusory assertion of unfairness fails to satisfy his burden of demonstrating a strong showing of prejudice."  *Branch*, 537 F.3d at 341. The Fourth Circuit concluded that because evidence of his earlier distribution would have been admissible to prove his knowledge in the later incident, severance would have resulted "only in an unnecessary duplication of efforts by the court, witnesses, and a second jury." *Id*. The same analysis applies here.  Each of the three incidents charged in the Indictment would be admissible if the counts were severed as requested by the defense, resulting in three trials with the same witnesses and evidence, but with proceedings occurring before three separate juries.

Moreover, the defendant's concern– that if the jury convicts him of charges arising out of one incident, they will merely assume he is guilty of the other incidents– does not justify a severance. As the Fourth Circuit has stated, if a jury can reasonably be expected to examine a defendant's conduct in connection with each group of charges separately, then that strongly militates against granting a severance. *Werner*, 620 F.2d at 929. This is particularly true where the trial court gives the jury appropriate instructions stressing the necessity for considering the merits of each group of charges independently. *Jamar*, 561 F.2d at 1107. Here, an appropriate instruction can be crafted instructing the jury to consider the merits of each incident charge separately.

The defendant also makes a sweeping assertion that if he "wishes to testify in his defense on some counts but asserts his privilege against self-incrimination as to other counts, it will be impossible for him to do so if the counts are tried together." (Defendant's Motion for Severance of Counts at p. 3) The Fourth Circuit recently addressed this argument in *United States v. Tyson*, Slip 2012 WL 287731 (4th Cir. February 12, 2012). In *Tyson,* the defendant argued that a severance was justified because he wanted to testify in relation to some of the drug charges but not others. The Fourth Circuit observed that "no need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying." *Tyson*, *quoting Goldman*, 750 F.2d at 1225. The Fourth Circuit went on to affirm the

denial of the severance , concluding that "[b]ecause Tyson's desire to testify was not definite and because the evidence supporting each of the counts would be mutually admissible in separate trials, his allegations of prejudice are undermined." *Id.* The same holds true in this case. The defendant has simply made a bald assertion that he may want to testify. The lack of information about his proposed testimony and the lack of definitiveness regarding his intention to testify simply does not establish the undue prejudice required to support a Rule 14 severance. In addition, as in *Tyson* and *Branch*, the evidence of the three incidents would be mutually admissible in any severed trials, resulting in unnecessary duplication of effort and expenditure of resources. As the defendant has failed to establish improper joinder or undue prejudice, this court should deny defendant's motion for severance.

**V.      The Defendant's Motion to Suppress Evidence Obtained as a Result of Constitutional Violations.**

On March 16, 2012, the defendant filed a motion to suppress evidence seized from the defendant's residence at the time of his arrest on May 21, 2010, and the statements he made on May 24, 2010, during his transfer to the federal courthouse. As set forth below, the defendant's constitutional rights were not violated. Accordingly, the motion to suppress should be denied.

**A.      Law Enforcement Officers Acted Lawfully When They Seized Evidence from the Defendant's Room.**

In his motion to suppress, the defendant asserts the warrantless seizure of drug paraphernalia and his cellular telephone on May 21, 2010, violated his Fourth Amendment rights. As detailed below, the officers were lawfully inside the defendant's residence to arrest him pursuant to an arrest warrant issued by this court. While lawfully present, they observed the drug paraphernalia and

cellular telephone in plain view and seized the items as evidence contraband and evidence of his involvement in the charged offenses.

### 1.    Facts

On May 21, 2010, three Calvert County Deputy Sheriffs responded to 9101 Halls Court, Owings, Maryland, the known residence of Patrick Sweeney and his parents.  Detective Cress and Detective Tomlinson approached the front door.  Sergeant Jones went to the rear corner of the house to make sure the defendant did not flee.  The defendant's father opened the front door, and when the defendant's father was advised of the warrant for his son, he indicated that his son was in the basement and directed the officers to the basement door.

The officers entered the basement and located the defendant sitting on a bed.  Upon entering the bedroom, Detective Cress observed drug paraphernalia, including numerous small plastic baggies with residue, an aluminum can top, and spoons, resting on top of the bookshelf.  The defendant was taken into the basement living area.  The defendant stated that a nurse was coming to the residence to treat him for an infection.  Officers also noticed some medical equipment in the living area.  Sweeney asked the detectives for permission to call his nurse to explain he would not be home for the next scheduled visit.  Sweeney identified a cellular telephone which was plugged into the wall as his and was permitted to use it to call the nurse.  Knowing that Sweeney had used his cellular telephone to arrange the distribution of heroin charged in the Indictment, Detective Cress seized the cellular telephone and charger as evidence.

### 2.    **The items were lawfully seized under the plain view doctrine**.

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

*Harris v. United States*, 390 U.S. 234, 236(1968).  Under the plain view doctrine, an officer may seize incriminating evidence without a warrant when: (1) the officer is lawfully present in the location where the item is observed; (2) the officer has lawful access to the item; and (3) the item's incriminating nature is readily apparent. *United States v. Jackson*, 131 F.3d 1105, 1109 (4th Cir. 1997) (reversing suppression of evidence where officer was entitled to seize spilled paper bag and its contents pursuant to plain view doctrine); *United States v. Rumley*, 588 F.3d 202 (4th Cir. 2009) (affirming denial of motion to suppress where officer seized gun, which was in plain view after passenger stepped out of vehicle). The Supreme Court has explained that the incriminating nature of an item is immediately apparent if law enforcement have probable cause to believe the item is *evidence* of a crime.  *See Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) (police must have probable cause to believe the object in plain view is contraband).  In *Texas v. Brown,* 460 U.S. 730 (1983), the Supreme Court stated that "the use of the phrase 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine...."  *Id.* at 741.  All that is required, explained the Court, is a "practical, nontechnical probability that incriminating evidence is involved." *Id.* at 742 (upholding plain view seizure of an opaque balloon that contained an illegal drug even though the contents of the balloon were not visible).

With regard to the presence of the officers in the defendant's bedroom, the officers were lawfully present to execute the arrest warrant.  It is well settled that when a warrant has been issued authorizing the arrest of a suspect, law enforcement officers have "the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton*

*v. New York,* 445 U.S. 573, 603 (1980); *see also  United States v. Hill,* 649 F.3d 258, 262 (4th Cir. 2011) . In this case, the officers knocked on the front door and were advised by the defendant's father that the defendant was in the basement of the residence.  Consequently, the officers acted lawfully when they entered the premises to effectuate the arrest.

The character of the drug paraphernalia was readily apparent to Detective Cress, as he was an experienced drug investigator.  Detective Cress was also familiar with the investigation and knew the defendant had used his cellular telephone to coordinate the distribution charged in the Indictment. As the nature of the items as contraband and evidence were readily apparent to Detective Cress and were in a location to which the officer properly had access, the seizure was lawful under the plain view doctrine.[3]

**B.      The Defendant's Statements Were Not the Product of Any Constitutional Violation.**

The defendant also alleges that statements he made on May 24, 2010 were obtained in violation of his constitutional rights.   As set forth below, the statements were voluntarily made by the defendant after he was advised of his *Miranda* rights.   As a result, there is no basis to suppress the statements.

**1.  Facts**

As set forth in the previous section, the defendant was arrested on May 21, 2010.  He was held over the weekend in the Calvert County Detention Center.  On Monday May 24, 2010, Calvert

---

[3]   Alternatively the items were lawfully seized as a search incident to this arrest. *See Chimel v. California*, 395 U.S. 752, 762-63 (1969)(a police officer who makes a lawful arrest may conduct a warrantless search of the arrestee's person and the area "within his immediate control.").

County Deputy Sheriff and DEA Task Force Officer ("TFO") David Jacobs arrived at the detention center to transport the defendant to the federal courthouse in Greenbelt, Maryland.

The defendant was handcuffed and placed in TFO Jacobs's vehicle. TFO Jacobs identified himself and advised the defendant that he was being taken to the federal courthouse in Greenbelt. As they were leaving the detention center, the defendant stated he wasn't a drug dealer. TFO Jacobs interrupted the defendant and told him that, before he said anything further, he (TFO Jacobs) needed to advise the defendant of his rights. TFO Jacobs then advised the defendant of his *Miranda* rights, utilizing a card[4] which he carried with him. As TFO Jacobs continued driving, the defendant reiterated that he was not a drug dealer. The defendant also stated that Harrison Waite came to borrow money from him, not to get heroin. The defendant further stated that he gets heroin from one of two guys named "Bo and Mo," whom the defendant believed to be related. The defendant advised that they ("Bo" and "Mo") sell heroin outside of Freddy's liquor store in District Heights, Maryland. Sweeney also voiced concern about losing his job as a result of his arrest.

## 2.   Legal Analysis

The Fifth Amendment privilege against self-incrimination provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., Amendment V. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court established a prophylactic, procedural mechanism that safeguards a defendant's Fifth Amendment privilege when that defendant is subject to custodial interrogation. 384 U.S. at 444. *See also Dickerson v. United States*, 530 U.S. 428 (2000). Specifically, in *Miranda,* the Supreme Court held that before conducting a custodial interrogation of a suspect, law enforcement officials must inform the suspect,

---

[4] A copy of the card is attached as Exhibit 1.

in substance, that he has the right to remain silent, that his statements may be used against him at trial, and that he has the right to an attorney during questioning. *Miranda*, 384 U.S. at 444.

*Miranda* applies where the defendant is "in custody" when being questioned, that is, where there is a formal arrest or a restraint placed on the suspect's freedom of movement to the degree associated with a formal arrest. *See Illinois v. Perkins*, 496 U.S. 292, 297 (1990) ("It is the premise of *Miranda* that the danger of coercion results from the interaction of custody and official interrogation"); *United States v. Sullivan*, 138 F.3d 126, 131 (4th Cir. 1998). *Miranda* also requires an interrogation which is defined as statements by laws enforcement officers which are designed or intended to elicit an incriminating response. *See United States v. Payne*, 954 F.2d 199 (4th Cir. 1992); *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980).

In addition to complying with *Miranda*, an individual's statements also must be provided voluntarily.  The applicable test for evaluating the voluntariness of a statement or confession is whether, given the totality of the circumstances, the will of the speaker was "overborne and his capacity for self-determination critically impaired." *United States v. Gray*, 137 F.3d 765, 771 (4th Cir. 1998) (*citing Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973)); *see also Mincey v. Arizona*, 437 U.S. 385, 399 (1978); *Haynes v. Washington*, 373 U.S. 503, 513 (1963).  In making this determination, "coercive police activity is a necessary predicate" to any finding that a confession was not "voluntary" within the meaning of the Due Process Clause of the Constitution. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).  In applying these general principles to various factual scenarios, the Fourth Circuit has expressly considered several factors in determining whether a statement was made voluntarily.  Specifically, the Fourth Circuit has considered, among other things, factors such as:  (1) whether law enforcement officers properly advised the suspect of his

17

right not to make any statements and of his right to have an attorney present; (2) whether the officers inappropriately told the suspect that he was legally obligated to speak with them; (3) whether the officers physically or verbally threatened the suspect; (4) whether the suspect appeared to be cooperative; (5) whether the suspect was misled by the officers into believing that his statements could not be used against him; and (6) whether the officers engaged in any violent behavior during their questioning.  *See generally, United States v. Braxton*, 112 F.3d 777, 781- 85 (4th Cir. 1997); *Gray*, 137 F.3d at 771.

In this case, the contested statements were made by the defendant while the only law enforcement officer in the vehicle was driving.  This was not a planned interview of the defendant. Rather, the defendant commenced speaking of his own volition (and without any affirmative questioning by the law enforcement officer) when the defendant entered the vehicle.  Out of an abundance of caution, TFO Jacobs advised the defendant of his rights. After the advice of rights was completed, and prior to any questions by TFO Jacobs,  the defendant denied any involvement in the distribution of heroin. There is no evidence that TFO Jacobs threatened the defendant or made any promises to him.  Indeed, the substance of the statements themselves belie any coercion by TFO Jacobs. Given that the defendant was advised of his *Miranda* rights and the utter absence of any coercion by TFO Jacobs, the statements were obtained in full compliance with the defendant's constitutional rights.  Accordingly, the defendant's motion to suppress these statements should be denied.

**VI.     Conclusion**

For all of the foregoing reasons, the Government respectfully request that the Court deny the defendant's  Motion to Exclude Evidence of Other Crimes, Wrongs and Acts (Docket No. 16), Motion for Severance of  Counts (Docket No. 48), and Motion to Suppress Evidence Obtained as a Result of Constitutional Violations (Docket No. 49).

Respectfully Submitted,

Rod J. Rosenstein
United States Attorney


By   _____/s/_____
Deborah A. Johnston
Arun G. Rao
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify on this _22nd___ day of March, 2012 that a true and accurate copy of the foregoing

Government Consolidated Response to Defendant's Pretrial Motions was served via CM/ECF filing

upon the following individuals:

> William Brennan, Jr.
> Brett J. Cook
> Brennan Sullivan & McKenna LLP
> 6305 Ivy Lane, Suite 700
> Greenbelt, MD 20770

> _____/s/_____
> Deborah A. Johnston
> Arun G. Rao
> Assistant United States Attorneys