```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND
 2                    NORTHERN DIVISION

 3   UNITED STATES OF AMERICA,    :   CRIMINAL NO.:

 4            Plaintiff,          :   JKB-10-0271

 5        vs.                     :

 6   PATRICK FITZGERALD SWEENEY,  :   Baltimore, Maryland

 7            Defendant.          :   August 27th, 2012

 8
                  *    *    *    *    *    *    *    *    *    *    *
 9
          The above-entitled case came on for sentencing before the
10
     Honorable James K. Bredar, United States District Judge.
11
                  *    *    *    *    *    *    *    *    *    *    *
12

13                       A P P E A R A N C E S

14

15   For the Government:

16        Deborah A. Johnston, AUSA

17        Arun G. Rao, AUSA

18   For The defendant:

19        William C. Brennan, Jr., Esquire

20        Brett J. Cook, Esquire

21

22   Also Present:  Agent David Jacobs
                    Gina Swillo, U.S. Probation
23

24   Christine T. Asif, RPR, CRR

25   Official Court Reporter
```

```
1                    P R O C E E D I N G S
2              THE COURT:  Good morning.  Be seated please.  Ms.
3    Johnston, you may call the case.
4              MS. JOHNSTON:  Thank you, Your Honor.  This is the
5    matter of United States versus Patrick Fitzgerald Sweeney, case
6    number JKB-10-0271.  The matter is before the Court for
7    sentencing.  I'm Deborah Johnston representing the government.
8    Seated with me at counsel table is my co-counsel, Arun Rao and
9    our case agent David Jacobs.
10             THE COURT:  Thank you.  Mr. Brennan, good morning.
11             MR. BRENNAN:  Good morning, Your Honor.  William
12   Brennan on behalf of the defendant Patrick Sweeney, accompanied
13   here, Your Honor, by Mr. Brett Cook of my office.  And Mr.
14   Sweeney seated to my right, Your Honor.
15             MR. COOK:  Good morning, Your Honor.
16             THE COURT:  Thank you.  Mr. Brennan and Mr. Cook, if
17   you would approach the podium with your client I would be
18   grateful.
19             This matter came on for a jury trial, April 10th
20   through 16th of this year.  At the conclusion of that trial the
21   defendant was found guilty on Counts 1, 2, 3, 5 and 7 of the
22   Second Superseding Indictment.  Upon those findings of guilt
23   the Court ordered preparation of a presentence report,
24   sentencing was scheduled for today.
25             Ms. Johnston, is the government ready for sentencing?
```

1           MS. JOHNSTON:  Yes, Your Honor, the government is

2    prepared.

3           THE COURT:  Mr. Brennan, is the defendant ready?

4           MR. BRENNAN:  Yes, Your Honor.

5           THE COURT:  Mr. Sweeney, have you and your attorney

6    read and discussed the presentence report including any

7    revisions that may have been made after the report's initial

8    disclosure to you?

9           THE DEFENDANT:  Yes, we have, Your Honor.

10          THE COURT:  Mr. Brennan, can you confirm that you and

11   your client have read and studied the presentence report?

12          MR. BRENNAN:  We have, Your Honor.  And most recently

13   last Wednesday or Thursday I met personally with Mr. Sweeney at

14   the institution.

15          THE COURT:  Okay.  So let's identify those issues, if

16   any, that remain outstanding in dispute between the two sides.

17   Are there issues, Mr. Brennan?

18          MR. BRENNAN:  No, Your Honor.

19          THE COURT:  Okay.  Are you in agreement that the

20   report as revised is correct?

21          MS. JOHNSTON:  Yes, Your Honor.

22          THE COURT:  Okay.  Let's then review the sentencing

23   guidelines computation that the probation department has

24   proposed to the Court.  Starts on page 6, but it's really on

25   page 7.  The offenses all group within the meaning of that

1    guidelines term, pursuant to Section 3D1.2(d).  So the highest

2    offense level of any offense is that which accompanies Count 2,

3    the base offense level is 38.  In light of that number, and the

4    relationship that the other offenses bear to Count 2, all of

5    these offenses group at that level 38, without further upward

6    adjustment.

7            There are also no adjustments for specific offense

8    characteristics, role in the offense.  There are no

9    victim-related adjustments, no obstruction adjustments.  The

10    defendant proceeded to trial and is not eligible for a downward

11    reduction to reflect acceptance of responsibility.  It leaves

12    us at an offense level of 38.

13            The defendant has 26 criminal history points.

14    Arguably 29 under a different method of computation, but

15    because of the way that the criminal history rules operate,

16    that number needs to be reduced to 26.  That offense level 38

17    and Criminal History Category VI, the guideline range

18    recommended by the Sentencing Commission is 360 months to life.

19    That is 30 years in prison to life.

20            I find that the sentencing guidelines have been

21    properly computed by the probation department.  And this

22    computation of theirs, which I have just reviewed, is adopted

23    as the Court's computation.

24            And Ms. Moye, the Judgment and Commitment order

25    should reflect that the advisory guidelines do calculate out at

1    26 -- excuse me at 38, VI, and that the range is 360 months to

2    life.

3              At this point in the process we'll clear the

4    courtroom temporarily and conduct an in camera session under

5    seal.  All those persons who are not direct participants in the

6    proceeding need to step out of the courtroom.  I think this

7    will be a brief recess and we will invite you back into the

8    courtroom as soon as we're finished with that portion of the

9    proceeding.

10              (Sealed portion redacted.)

11              THE COURT:  Okay.  That concludes the sealed portion

12   of the hearing.  The courtroom deputy will unlock the courtroom

13   door and we are back on an open record.  And Mr. Brennan, you

14   and Mr. Cook and your client may be seated.  And I'll hear

15   first from the government.

16              MS. JOHNSTON:  Thank you, Your Honor.  As the Court

17   knows the sentencing guideline range has been calculated based

18   upon the nature of the offense in this case, which was a

19   distribution of heroin that resulted in the death of Harrison

20   Waite.  I think there are some facts that I would like to bring

21   to the Court's attention in regards to Harrison Waite that did

22   not necessarily come out at the trial of this matter.

23              Harrison Waite was still a young man, he was in his

24   20s when he died of a heroin overdose.  What we learned in

25   talking with his roommates, where he had recently moved into

1    the residence where he was when he died, was that Harrison

2    Waite had attempted by moving into that location about a month

3    or so before his death, was attempting to get away from and

4    avoid the use of heroin.  He was attempting to be there and be

5    away from that.

6            He had gotten started on heroin, according to

7    statements he made to those individuals, by his contact with

8    Mr. Sweeney.  Mr. Sweeney for a number of years was the

9    boyfriend, live-in boyfriend of his mother Tina M. Law.  For

10   some time Harrison lived at that location.  Mr. Waite, of

11   course, was an adult that made choices of his own, and is not

12   free of responsibility for his participation in the heroin, but

13   it was through his contact with Mr. Sweeney that he began using

14   heroin.  And that he had made attempts and was attempting to

15   get away from heroin and to stop using it.  Indeed he was not

16   strong enough to do that.

17           However, it was through Mr. Sweeney's acts in making

18   heroin readily available to him that he did, in March, pass

19   away as a result of using that heroin.  Mr. Sweeney -- Mr.

20   Waite, as you can see from the victim impact statements that

21   were submitted, the death of Mr. Waite has weighed heavily on

22   his mother, Ms. Law, and on his sister Lisa Morris who's

23   present here in the courtroom today.  Ms. Morris describes how

24   her brother was indeed a caring father and cared dearly for his

25   son who is minor, who was six years old, who now does not have

1    a father in his lifetime.

2            And indeed, he was using -- we all recognize that he

3    was using heroin, but he still was a responsible member of

4    society in that he maintained employment, and he did have a

5    relationship with his son and his son's mother.  So he was

6    making some contribution to society, albeit not as great as he

7    could have had he not been involved with the use of heroin.

8            So there is a loss that the community suffers, but

9    particularly Harrison Waite's family.  His son will not have

10   his father here.  And perhaps his father does represent a

11   lesson for his son when he gets to be older, in terms of the

12   dangers and the ultimate price you pay for abusing drugs and

13   using illegal drugs such as heroin.  But indeed, this crime

14   here, this distribution of the heroin to Mr. Waite has caused

15   tremendous loss to Mr. Waite's family and we should not forget

16   that fact.

17           At the same time we do recognize that Mr. Sweeney

18   here has a lengthy record.  That he too, not only was he

19   distributing heroin, but he was also a user of drugs and has

20   been for any number of years.  So we think perhaps that

21   distinguishes Mr. Sweeney in some respects from the drug

22   dealers that very frequently appear before Your Honor, in that

23   those individuals are in it purely to make money.  So we do

24   recognize that Mr. Sweeney suffered from an addiction to

25   heroin.  And in fact, his -- appears to have had a life long

1    addiction to heroin that contributed to his somewhat lengthy

2    criminal history.

3              Given his criminal history, given the nature of this

4    offense, and that it has resulted in the loss of an individual

5    who was attempting to raise his child -- assist in the raising

6    of his child and to contribute in some way to society, we'd ask

7    the Court to impose a sentence that is reflective of the loss

8    that the community has suffered as a result of the death of Mr.

9    Waite, that it indeed punishes Mr. Sweeney for that role in

10   that death.

11             We do not stand before the Court and suggest what is

12   an appropriate sentence.  We believe that's best left for the

13   Court under these circumstances, because the Court has heard

14   the testimony in this case, has had an opportunity to review

15   the victim impact letters that were submitted, and is far more

16   able to impose -- to come up with a just sentence than the

17   government under the circumstances here.

18             We recognize that there's a mandatory minimum

19   sentence of 20 years, that the statute -- that the Court is

20   required to impose.  So we'd ask the Court to impose a sentence

21   that the Court finds reasonable under the 3553 factors, that

22   sentence being somewhere between 20 years and the maximum

23   sentence of life as set forth under the sentencing guidelines.

24             THE COURT:  Thank you, Ms. Johnston.  A couple of

25   questions for you.  And I appreciate the position that the

1    government has taken at sentencing.  It's a hard case, knowing

2    where to place this.  A man died.  And the consequences of that

3    are permanent for his family, for his child, and they cannot be

4    overstated.  On the other hand, sadly, defendants appear in

5    this court almost every day and are found guilty or plead

6    guilty to the charge of distributing drugs.  And Congress has

7    drawn this great distinction between an act of distribution

8    that results in someone's death and one that doesn't.

9         And I'm having trouble reconciling that with my

10   understanding of the moral underpinning of our criminal justice

11   system, which different from our civil system, is about

12   punishing -- it's about measuring culpability as a function of

13   guilty intention.  And Mr. Sweeney's conduct was wrong and it

14   was illegal.  His criminal history is a whole other topic,

15   which is extreme.  But I didn't hear in the trial, nor do I

16   think you did, a shred of evidence suggesting that he wanted

17   some harm or injury, or God forbid, death to come to Mr. Waite

18   as a result of the sale of the heroin.

19        From a standpoint of intent and culpability for an

20   act, what's the difference between Mr. Sweeney and other people

21   who come before the Court who also sell heroin.  This is -- and

22   in some ways it's a rhetorical question, because I'm not sure

23   anybody can answer this.  But it is one of the questions that

24   burdens me as I decide, well, what's the appropriate penalty

25   and what's different about him than other people who sell

1   heroin?  You, in this case, were able to prove that this

2   particular heroin sold by this man was used by Mr. Waite, that

3   he overdosed on it and he died.

4          But there's lots of other situations where people die

5   from the use of heroin, they got it some place.  And I suppose

6   if we could connect back to the person who actually sold it to

7   them, we would try to do that.  And then bring that person in

8   and say, no, you're somehow different from heroin -- other

9   heroin sellers because you had the misfortune, really that's

10  all it is, that one of your users died when others didn't.

11  It's problematic for me in terms of putting Mr. Sweeney somehow

12  in a different category from other people who sold heroin who

13  come before the Court.

14         Do you have any thoughts about that, have you

15  wrestled with the same dilemma?

16         MS. JOHNSTON:  Your Honor, quite frankly, Mr. Rao and

17  I have had many discussions concerning Mr. Sweeney and the

18  circumstances of this case.  But I might suggest to the Court

19  that perhaps we need to look at it from a different

20  perspective.  And that is not that Mr. Sweeney's conduct is

21  being treated more harshly than other heroin dealers, but those

22  other heroin dealers are getting a reduced sentence because we

23  can't prove that, in their particular instance, a death

24  resulted.

25         It is inherent -- his decision to distribute heroin

```
1    he has taken the risk.  He has taken the risk that the person
2    he's going to sell it to is going to be okay this time and
3    they're not going to overdose from it.  So every drug dealer,
4    when they sell those drugs, takes that inherent risk that I'm
5    going to make my money, or I'm going have enough money to get
6    my heroin, and that person I sell it to is not going to die.
7    And that's a risk that they bear, recognizing that they're
8    dealing with a serious drug.  And maybe we should be treating
9    those who sell it more harshly because they put individuals at
10   risk.
11              THE COURT:  Maybe we should, but we don't.  Another
12   example of this problem in our criminal justice process, far
13   more common than the facts that are in front of all of us
14   today, drunk drivers.  Drunk driver, two people get drunk in a
15   bar.  Both acts of great irresponsibility.  Both then go out
16   and get behind the wheel of a car and go barreling down the BW
17   Parkway.  One person comes upon someone who's changing a flat
18   tire and drives over them and kills them.  The other person, it
19   just didn't happen that someone got a flat tire night.  They
20   would have hit them if they were there, they just weren't.  And
21   the one person is guilty of auto manslaughter, and is looking
22   at five years in prison.  The other person it's a first offense
23   drunk driving and they get a PBJ.
24              MS. JOHNSTON:  And that's because the consequences of
25   their act on a particular day were different, and that we have
```

1   to take responsibility for the consequences of our act.  Even

2   when we act negligently and in -- or thinking more of a case of

3   someone I know in Prince George's County who recently had to

4   decide a sentence in a hit and run accident, where the woman

5   may have fallen asleep and ran off the road and actually

6   killed.  So even when people act negligently or recklessly, as

7   in the case -- and intentionally, as in the case of a drunk

8   driver, yes, one gets away with it probation.  But one, whose

9   consequences of that driving, were the taking of a life gets

10  punished more harshly because of the consequences.

11              THE COURT:  And but the operative word you just used

12  is the one that we gives me the problem, is punishment.  In the

13  civil system if you run off the side of the road and bang into

14  a tree and owe the government, you know, $100 for the tree

15  surgeon to come and paint on the tree, well, those are the

16  consequences of your act.  And the other person ran off the

17  side of the road and hit someone who was changing a tire and

18  killed them, you owe the consequence of your act, which is you

19  know, $3 million in damages for the wrongful death of a person

20  that you just ran down.  That's the civil system.  The civil

21  system is compensatory.  That's what's at the root of it.

22              The criminal system, in its Anglo-American origins

23  has been about meting out punishment as a function of your

24  guilty intent.  Criminal law 100 that we all took, my case 35

25  years ago as I'm sure it was only ten years ago in your case,

1    but whatever, that was what we were all taught in law school,

2    that that's the fundamental difference between the two justice

3    systems is that one is compensatory and the other one responds

4    to misbehavior with punishment calibrated to the culpability of

5    the bad intention.

6              And here he sold heroin and someone died.  And

7    Toszer, all these other people we hear about in this case,

8    they're all -- I mean, it's a big group of them and it could

9    have happened in any one of six different directions.  It just

10   happened Sweeney to Waite, Waite died.  I find it very

11   problematic.  And you're in a lucky position sitting at the

12   table that you're sitting at and being able to say what you

13   said a few minutes ago, which I respect completely, which is

14   it's a hard problem, Judge, you heard the evidence, now do your

15   job and tell us what the fair sentence is.  But that's a hard

16   problem in this case.

17             MS. JOHNSTON:  And I appreciate that, Your Honor.

18   But indeed, I think what Congress has said here, that when you

19   distribute drugs and the consequence of that is someone's

20   death, then you owe society.  You take that risk by committing

21   that crime and you owe society a greater debt than if it

22   doesn't result in death.

23             THE COURT:  Well, they certainly said that to the

24   tune of 20 years, about which I have no discretion.  And that

25   part of the law gets enforced because that's my oath.  But

```
1    beyond that, it's in my hands and a function of my judgment, my
2    experience, my legal education.  And these are the problems
3    that those elements of my background raise for me.
4              MS. JOHNSTON:  And I will tell -- share with you
5    something, probably the only quote I've ever used in a
6    courtroom, and that's when I've had to address a jury in a
7    penalty phase in a death case.  And that is I quote Saint
8    Augustin who says justice is that virtue that assigns each man
9    his due.  And that's what we ask you to do.
10             THE COURT:  Well I appreciate that.  And I will, of
11   course, do that to the best of my ability.  And I appreciate
12   your willingness to engage in this challenging dialogue.
13             Are there any victims that wish to be heard, Ms.
14   Johnston?
15             MS. JOHNSTON:  I don't believe so today.  Ms. Morris
16   is here.  She submitted a letter to the Court.
17             THE COURT:  Which I have read.
18             MS. JOHNSTON:  Ms. Morris, anything you want to add
19   to your letter?
20             THE COURT:  All right.  No victims wish to be heard.
21             Okay.  So Mr. Brennan, Mr. Cook, Mr. Sweeney you can
22   reapproach the podium.  Happy to hear from counsel and from the
23   defendant.
24             MR. BRENNAN:  Your Honor, Mr. --
25             THE COURT:  I've raised issues with Ms. Johnston, I'm
```

1    sure you'll have some things to say about that.

2              MR. BRENNAN:  We've actually given that a lot of

3    thought, had a lot of interoffice discussion.

4              THE COURT:  I can imagine that you have.  The

5    problematic side of this equation for the defendant, as far as

6    I'm concerned is less the issues that I was discussing with Ms.

7    Johnston, and the fact that while the guidelines are advisory

8    and I'm not required to sentence strictly within them, we can

9    take a lot from the investigation that a guidelines preparation

10   requires us to do.  And that investigation reveals 26 criminal

11   history points.  That's after we found some double counting and

12   shaved it back a little bit.

13             MR. BRENNAN:  It does.  And it doesn't -- our

14   decision basically was sort of not to get into the weeds on the

15   criminal history, Your Honor.  But 12 of those points, Your

16   Honor, resulted from -- well, I'm getting into the weeds I

17   don't really want to -- but a number of them, Your Honor, on

18   the first time through Mr. Sweeney received the benefit of the

19   doubt when a court sentenced him to some significant suspended

20   time in Prince George's County.  And the first -- and the

21   sentences, Your Honor, were imposed in the early 80s.  Mr.

22   Sweeney was given ten years all suspended on a number of

23   different cases.  And then they result in a violation of

24   probation, they all kicked back in, and 12 of those points are

25   accountable for that.

1          Having said that, 12 -- 26 minus 12 still leaves us

2     with a 14, Your Honor, which is still Criminal History Category

3     VI.  So in the discussions that Mr. Cook and I have had, quite

4     frankly, it was -- I'm going to tell you exactly what he said,

5     he says, Bill, getting into a discussion of Mr. Sweeney's

6     criminal history, even if we discount those 12 points, still

7     leaves him at a Criminal History Category of VI.  And what we

8     really see here is what Your Honor alluded to earlier, Your

9     Honor, which is a heroin addict.  A person who's been addicted

10    to drugs.  We see the theft, the robberies, the uses, it's a

11    tragic life long demonstration of a person who has been

12    addicted to drugs, particularly heroin.

13          And we don't see, Your Honor, really the -- as Your

14    Honor, again, mentioned earlier, the distribution for profit or

15    that he's out on the streets making a lot of money and selling

16    this.  He's basically financing his hobby.  That doesn't make

17    it right.  And we certainly have the Criminal History Category

18    VI, which is what it is.  And I mean, I -- we're stuck with

19    that.

20          But I do have, Your Honor --

21          THE COURT:  I don't want to be flip, but what happens

22    in these kinds of conversations with a Category VI defendants

23    and beyond is, and I've said it myself from the bench, you

24    know, and I caught myself this morning thinking this through

25    again.  It's like what do you say to somebody in this

1   situation?  And I recently said to somebody, you know, well,

2   it's Category VI, it's burglary this, theft that, and

3   everything else, but the one thing I can say is, well, at least

4   you haven't killed anybody.  Well, now, you know, I've got that

5   and arguably, the discussion with Ms. Johnston aside, he has

6   killed somebody.  And it's a hard case for mitigation.

7            MR. BRENNAN:  It is, Your Honor.  And at some point

8   we do have Mr. -- a number of people have written letters on

9   Mr. Sweeney's behalf.  A lot of them have appeared here, at

10  some point we'll introduce them to the Court.

11           But one of the things -- it's interesting that Your

12  Honor talked about criminal intent.  Because one of the

13  discussions that we've had has been mens rea, criminal intent.

14  And so we looked at the guidelines as if, in one sense, if a

15  death had not occurred.  Now, if this were just a distribution

16  of heroin case, and no death resulted, we think the quantity

17  Your Honor would be about -- if it were 10 grams of heroin, it

18  would be a level 14.  Even with a Criminal History Category of

19  VI, Your Honor, that is 37 to 46 months.

20           THE COURT:  Right.  I did the exact same calculation.

21           MR. BRENNAN:  If it were 10 to 20 grams of heroin it

22  would be a level 16, which is 46 to 57 months.  So and that

23  again is with Criminal History Category of VI.  So the pure

24  distribution of heroin, Your Honor, gets you into the range of

25  something less than 5 years.  We carried the analysis a step

1    further, and we looked at it in terms of manslaughter.  Now

2    under 2A1 --

3           THE COURT:  Well, what about looking at him as a

4    career offender before you get to manslaughter.  He would be a

5    32, VI.  And I did that one as well.  What's that answer?

6           MR. BRENNAN:  That is 32, VI is 210 to 262.

7           THE COURT:  210 to 262.

8           MR. BRENNAN:  But if it were involuntary manslaughter

9    with negligent conduct, the base offense is 12.  If it were

10   involuntary manslaughter with reckless conduct the base offense

11   is 18.  And the -- of course, as the Court knows, the maximum

12   sentence for involuntary man slaughter is eight years.

13          THE COURT:  Right.

14          MR. BRENNAN:  For voluntary manslaughter, the maximum

15   sentence is 15.  And voluntary manslaughter, Your Honor, it

16   scores out at 29, with a Criminal History Category of VI, is

17   151 to 188.  And the 188 is the statutory maximum.

18          THE COURT:  180.

19          MR. BRENNAN:  15.  Second degree murder scores at a

20   level 38, which is what this crime scores at, a level 38.

21          So criminal intent, if we step back and we say, did

22   Mr. Sweeney have the criminal intent that is the functional

23   equivalent of second degree murder in this case, I think the

24   answer is a resounding no.  Did Mr. Sweeney, in a manslaughter

25   situation, where there would be the intent to do the act, but

```
1   not the requirement for the ultimate, ultimate death in this
2   case, you know, is it closer or more akin to a voluntary
3   manslaughter situation, which would be a 15-year sentence.  Or
4   even reckless conduct, that is a distribution of heroin knowing
5   that someone could die, reckless conduct.  Then Your Honor the
6   statutory maximum is eight.
7           And to follow up on Your Honor's analogy, in terms of
8   a drunk driver, two people leave the scene, or leave a bar,
9   both of whom have consumed alcohol, but one decides to ride
10  with the other, and the person who is the passenger is as drunk
11  as the driver.  And the accident occurs and the passenger is
12  killed.  The passenger is not without fault in that case.  The
13  passenger chose to drink, chose to get into a car with someone.
14  Certainly they didn't intend to die that evening, but they made
15  choices because they're adults.
16          So the analogies, Your Honor, in this case, and I
17  certainly appreciate the government's candor in saying Mr.
18  Waite was certainly not free of responsibility in this case.
19  But the fact of the matter is when you do look at what the
20  criminal intent was by my client, I don't think any reasonable
21  argument can be made by the government, I certainly don't think
22  the Court can get there, in terms of is this the -- is Mr.
23  Sweeney's conduct in this case the functional equivalent of
24  second degree murder.  And I don't think it is, Your Honor.
25  Not at all.  Is it the functional equivalent perhaps, and
```

```
 1   should he bear responsibility for voluntary manslaughter?  Then
 2   it's 15.
 3            The point I'm making, Your Honor, is that we believe
 4   that based on his conduct in this case, and all the facts of
 5   this case, is that a sentence of greater than the mandatory
 6   minimum in this case of 20 years is not necessary to achieve
 7   the appropriate goals of sentencing in this case.  I think that
 8   the criminal culpability, the criminal intent that Mr. Sweeney
 9   has, Your Honor, is reflected in the mandatory minimum, not
10   Your Honor, the guideline calculation.
11            THE COURT:  Thank you, Mr. Brennan.  Do you want to
12   introduce any of his family?
13            MR. BRENNAN:  Yes, Your Honor.
14            MR. COOK:  I can do that, Your Honor.  A number of
15   these people have written letters, which I'm sure the Court has
16   already reviewed.
17            THE COURT:  Yes.
18            MR. COOK:  And they're all seated in the second row.
19   Friends of the family, John and Veronica Sweeney, Mr. Sweeney's
20   parents.
21            THE COURT:  Good morning.
22            MR. COOK:   Seated beside them Hope Steinberger who's
23   a friend of Mr. Sweeney's family.  Seated at the far left is
24   Kevin Sweeney, who is Mr. Sweeney's nephew.  And seated behind
25   him is Robert Ogle, who I know has written to a letter to the
```

1    Court.

2              THE COURT:  Good morning to you.  Thank you.  All

3    right.

4              Mr. Sweeney, you have the absolute right to address

5    the Court before sentence is passed in your case.  You're not

6    required to say anything, but if you wish to say something I am

7    here to listen to you.

8              THE DEFENDANT:  Your Honor, I'm innocent of these

9    charges.  I didn't do anything.  I didn't sell Harrison any

10   drugs.  I didn't sell Mr. Toszer any drugs.  And I wrote a

11   letter, my lawyer said I shouldn't read it.  I'll leave it at

12   that.

13             THE COURT:  Okay.  Well, that's your call on how you

14   want to proceed.  Of course, you're -- you stand before the

15   Court with a jury having tried your case and come to a

16   conclusion different from the one that you've just articulated.

17   And I adopt the jury's findings in this case, as I must, and as

18   I find they were appropriate, given the evidence that was

19   presented.  So you have been adjudicated guilty of this

20   offense.  And the question is, you know, what is the

21   appropriate penalty.

22             In deciding what penalty to impose in a criminal

23   case, the Court is directed to apply the factors that are set

24   out in Section 3553(a) of Title 18 of the United States Code.

25   There are seven factors that are identified there.  And I will

1  review them.  And I will apply them.  And they will guide me in

2  determining what sentence is appropriate in this case.

3         The first factor to take into consideration, the

4  history and characteristics of the defendant.  The defendant

5  has a horrendous criminal history.  There's no other way to

6  express it than to say that he's lived a life of crime.  It

7  hasn't been a life of assaults and murders and rapes and those

8  sorts of things, but it nonetheless has been a consistent

9  pattern over a lengthy period of time of crime.  Mostly

10 property crimes.  But nonetheless, under the sentencing

11 guidelines, as has already been noted, he's earned 26 points.

12 That's two times the top number of 13 that gets you into the

13 highest Criminal History Category, Category VI.

14        The defendant is not a young man, but his life has

15 defied the normal pattern, the normal demographic pattern that

16 we see.  Which is that there are spurts of criminal conduct and

17 offending that occur when a person is in their late teens and

18 into their 20s.  And then by the time they're 30 or so, that

19 misbehavior ends.  Not in this case.  The defendant stands

20 before me as an older man with gray hair, and he's been

21 involved in the criminal justice system virtually his entire

22 adult life.

23        The second factor to take into account, the nature

24 and circumstances of the offense.  This is where this case from

25 a sentencing standpoint becomes extremely complicated.  I'm not

1    going to elaborate greatly on what I've said already, but this

2    is where the real problems lie in determining what the

3    appropriate disposition.  From the evidence I heard in this

4    trial, this was a routine sale of a modest quantity of heroin.

5    Certainly I heard no proof of any animus toward the victim, any

6    desire on the part of the defendant to harm the victim, to

7    injure him.  Certainly no evidence whatsoever of a desire and

8    intention to kill the victim.

9         The evidence revealed a culpable mental state.  It

10   was that the defendant had the intention to sell a small

11   quantity of heroin to a friend.  And this is a crime.  In fact,

12   it's a felony.  But it's a crime that is very far from murder

13   or, frankly, even manslaughter.  I've already offered my view

14   in my discussion with Ms. Johnston about what is the

15   fundamental moral underpinning of our criminal justice system,

16   and it is that we punish bad intentions.  That we measure out

17   punishment and penalty as a function of guilty intent.  It's an

18   intent based system.

19        It's not the civil system where we measure out

20   damages as a function of what's necessary to compensate the

21   injured party, who suffered at the hands of the negligent or

22   reckless defendant.  Our sense is that punishment to be just

23   must be a function of the bad intention not an accident.  Some

24   of the consequences that have been endured by the family of Mr.

25   Waite in this case, they are the result of an accident.  Some

1    of it is the result of Mr. Waite's own misbehavior and poor

2    judgment.  All of that has to be factored in as the Court

3    assesses the nature and circumstances of the offense.

4            The third factor to be considered is the seriousness

5    of the offense.  Distribution of illegal drugs is always

6    serious.  And Ms. Johnston's point is well taken.  And that is

7    that, frankly, anyone who sells drugs is taking at least the

8    risk that their conduct, that they're going to be in the chain

9    of causation of someone's death.  Certainly that has to be lain

10   at Mr. Sweeney's feet.

11           Fourth, the need for deterrence.  Well, when you have

12   the sort of consequences that we have here, whether they were

13   intend by Mr. Sweeney or not, it certainly gives rise to a

14   moral justification for deterring the conduct.  The conduct

15   here, the sale of heroin, can result in terrible consequences,

16   death.  There is nothing worse.  There is a powerful need for

17   deterrence, both of the defendant, but maybe in this case more

18   it's the principle of general deterrence that comes into play.

19   Sending a message to the rest of society that involvement with

20   drug activity can't be tolerated and won't be tolerated.

21           The need to protect the public is the fifth factor.

22   Well, it's not so much that I'm concerned about protecting the

23   public from Mr. Sweeney as a drug dealer whose conduct might

24   kill people.  Although, that is certainly a consideration.  But

25   no more so for Mr. Sweeney than others who sell small

1    quantities of drugs.  So that principle is operating here.

2             More what comes into play, though, under this fifth

3    factor, is the defendant's criminal history.  And that is, you

4    know, let's not get lost in this discussion about how serious

5    is this particular offense, did he know that Mr. Waite was

6    going to die?  What about the fact that he has been in the

7    criminal justice system enough times to generate 26 criminal

8    history points, and still here is back in court again for

9    having committed another violation of the law.  The public

10   needs to be protected from Mr. Sweeney, without a doubt.

11            Mr. Brennan has made reference to the defendant's

12   life long addiction to heroin, I find that that's credible,

13   based on the evidence that I heard, and the report that I've

14   reviewed.  So, therefore, in looking at the sixth factor, the

15   need to provide the defendant with training or treatment,

16   that's present in this case.  He needs treatment.  And during

17   the period of incarceration he should receive as it, as well as

18   during any period of supervision that would come after that.

19            Seventh we get to the advice of the Federal

20   Sentencing Guidelines, the seventh factor that the Court's to

21   take into account in this case.  They recommend a sentence of

22   between 360 months and life.  The guidelines in this case at

23   the very high level, offense level 38, are driven by the fact

24   that this death occurred.  I recognize that the Sentencing

25   Commission is trying to be faithful to the message sent by

1    Congress in establishing the 20-year mandatory minimum for this

2    offense, and trying to give affect to this notion that this

3    consequence of death somehow distinguishes this from other drug

4    distributions.

5            I find, though, that this is an example of how and

6    where the guidelines are particularly unhelpful in trying to

7    decide what is a fair and appropriate sentence.  The guidelines

8    come to the answer that they come to through a very mechanical

9    process that seems, in my judgment, to be utterly detached from

10   these other deeper more important principles about our

11   sentencing system.  And, therefore, I find this to be of really

12   no assistance in deciding what sentence should be imposed.  And

13   I do not intend to impose a sentence under the sentencing

14   guidelines.

15           Taking into account the defendant's egregious

16   criminal history, but also taking into account that there is no

17   evidence of the defendant intending to harm the victim in this

18   case, and given the fact that the Court has a fundamental

19   policy difference with the sentencing guidelines as they

20   address this issue, invoking the Court's authority under *United*

21   *States versus Kimbrough* to take that policy difference into

22   account, and to give the guidelines less or little significance

23   in the sentencing decision, taking all that into account, in

24   the Court's judgment, the overall sentence that is sufficient

25   but not greater than necessary to comply with the purposes set

1    out in 18 United States Code, Section 3553(a)(2), is a total of

2    240 months imprisonment or 20 years, which happens to also be

3    consistent with the mandatory minimum figure of 20 years, which

4    Congress has specified.  That's the total sentence.

5            The actual imposition of sentence in this case

6    becomes a slightly more complicated proposition, because the

7    defendant with convicted on multiple counts.  And I'll now

8    review exactly how the sentence is imposed with respect to each

9    of the five counts of conviction.  On Count 1 the defendant is

10   ordered to serve 46 months imprisonment.  On Count 2 the

11   defendant is ordered to serve 240 months imprisonment.  On

12   Count 3, the defendant is ordered to serve 46 months

13   imprisonment.  On Count 5 the defendant is ordered to serve 46

14   months imprisonment.  On Count 7 the defendant is ordered to

15   serve 46 months of imprisonment.

16           In every case the sentence that I have just imposed

17   is to run concurrently with the other sentences that I have

18   just imposed.  That is to say that 240 months have been imposed

19   on Count 2, the 46 month sentences imposed on each of the

20   Counts 1, 3, 5 and 7 is ordered to be served concurrently with

21   the 240 months to be served on Count 2, with the total sentence

22   being then 240 months.

23           I'm going to order a term of supervised release in

24   this case.  The defendant must serve a term of at least five

25   years on supervised release with respect to his conviction on

1    Count 2.  I impose that.  Five years of supervised release on

2    Count 2.  With respect to the other four counts, I impose three

3    years of supervised release on -- as to Count 1; one year as to

4    Count 3; one year as to Count 5; and one year as to Count 7.

5    All supervised release terms will be served concurrently for a

6    total of five years on supervised release.

7              I find that the defendant has no ability to pay a

8    fine.  No fine is ordered.  With respect to restitution, I do

9    not believe that I received a specific request for restitution

10   from the government.

11             Ms. Johnston, am I correct in that regard?

12             MS. JOHNSTON:  That's correct, Your Honor.

13             THE COURT:  No restitution is ordered.  Similarly,

14   with respect to forfeiture, no specific request was received

15   from the government.  I find no motion pending.

16             Am I right in that regard, Ms. Johnston?

17             MS. JOHNSTON:  Yes, Your Honor.

18             THE COURT:  No forfeiture is ordered.  The defendant

19   has been convicted on five felony counts, therefore, he's order

20   today pay a $100 special assessment on each count of conviction

21   for a total of $500.

22             Now, there comes the question of whether the Court

23   should make recommendations with respect to the place of

24   incarceration and with respect to any programmatic

25   opportunities that the defendant might have while incarcerated.

1           Mr. Brennan, the Court's inclination is to request

2    that the Bureau of Prisons designate the defendant to serve his

3    time in a facility consistent with his security level that is

4    as close as possible to Baltimore, Maryland.  Frankly, I guess

5    I should alter that as close as possible to Calvert County,

6    Maryland.

7           MR. BRENNAN:  Yes, Your Honor.  We've had some

8    discussions with our client about that.  We understand that

9    there's a new Bureau of Prisons facility supposed to open

10   August of this year in Berlin, New Hampshire.  Client suffers

11   from asthma, that's a very new facility.  We think they'll have

12   significant training in the area of HVAC, which my client is

13   skilled in, and may make it -- so he has requested designation,

14   if it's about to open, to the facility in Berlin, New

15   Hampshire.

16           THE COURT:  Do you know if it's an FCI or what its

17   security level is?

18           MR. BRENNAN:  I think it's an FCI, Your Honor.

19           THE COURT:  All right.  And it's Berlin, B-e-r-l-i-n.

20           MR. BRENNAN:  That's correct, Your Honor.

21           THE COURT:  All right.  Upon the request of counsel,

22   the Court will recommend that the place of incarceration be the

23   Federal Correctional Institution at Berlin, New Hampshire,

24   provided that facility is consistent with the defendant's

25   security level.  And I'm also prepared to recommend the

```
1    defendant receive drug treatment while incarcerated in any
2    program that the Bureau of Prisons has available for him.
3              MR. BRENNAN:  Yes, Your Honor.  We were going to
4    request the RDAP program.
5              THE COURT:  All right.  Including, Ms. Moye, the RDAP
6    program.  The sentence does not fall within the guideline
7    range, but is nonetheless appropriate in light of the Court's
8    findings on the Section 3553(a) factors.  No restitution was
9    ordered in this case, because no request was made for
10   restitution by the government.
11             Mr. Sweeney, you have the right to appeal your
12   conviction in this case.  You have the right to appeal the
13   sentence that has been imposed upon you, if you believe that
14   either was unlawful or inappropriate in any way.  If you wish
15   to pursue your appellate rights, you must file a notice with
16   this court within 14 days of today advising that you do intend
17   to appeal.
18             Mr. Sweeney, do you understand your right to appeal?
19             THE DEFENDANT:  Yes, I do, Your Honor.
20             THE COURT:  Do you understand your obligation to file
21   your notice of appeal within 14 days of today or suffer the
22   consequence of waiver of your right of appeal?
23             THE DEFENDANT:  Yes, I do, Your Honor.
24             THE COURT:  Okay.
25             MR. BRENNAN:  Your Honor, we are prepared to
```

1   electronically note an appeal for Mr. Sweeney today.  And also

2   file a CJA-23 form along with that as well, which he has

3   already executed.

4              THE COURT:  Thank you.  That will all be of record

5   shortly then.

6              I neglected to cover explicitly the conditions of

7   supervised release.  And there are three in number.  First, the

8   defendant shall satisfactorily participate in a treatment

9   program approved by the probation officer relating to substance

10  or alcohol abuse, which may include evaluation, counseling, and

11  testing, as deemed necessary by the probation officer.

12             Second, the defendant shall satisfactorily

13  participate in a vocational or educational program.  I didn't

14  miss the testimony at trial about the defendant's skill as a

15  HVAC technician.  The difficulty that the defendant's going to

16  have to face is that when he is away for 17 years, no doubt

17  that trade is going to change, and the defendant is going to

18  need to be able to support himself upon release.  He's going to

19  need vocational or educational update.  And this is the best

20  tool I believe that we have to ensure that the defendant is not

21  a further recidivist.

22             Third, in light of the defendant's difficulties with

23  substance abuse over the course of his life, in addition of

24  course to the restriction that he cannot consume or possess

25  illegal drugs while he's on supervised release, I'm also

```
1    placing him under a prohibition that he's not allowed to
2    possess or consume alcohol during the period of supervision.
3              The -- there's been no request for voluntary
4    surrender, and I take it there is none now?
5              MR. BRENNAN:  That's correct.  His bond was
6    revoked -- his release was revoked at the time of conviction,
7    Your Honor.
8              THE COURT:  Right.  The Court will prepare a Judgment
9    and Commitment order and a statement of reasons.  And those
10   public records will then be filed with the United States
11   Sentencing Commission and with the U.S. Bureau of Prisons.
12             Ms. Johnston, is there anything else from the
13   government?
14             MS. JOHNSTON:  Yes, Your Honor, the government would
15   move at this time to dismiss the original and superseding
16   indictments that are pending in this case, as the defendant was
17   tried on the Second Superseding Indictment.
18             THE COURT:  That's right, Ms. Moye, we have both an
19   indictment and a superseding indictment.
20             THE CLERK:  Yes.
21             THE COURT:  Now, there were counts in the second
22   superseding indictment that did not go to the jury, and I think
23   they were both dismissed on the morning that the trial began.
24             MS. JOHNSTON:  Yes, Your Honor, prior to the start of
25   the trial we dismissed the other counts in the second
```

1    superseding indictment.

2            THE COURT:  Okay.  Anything else from the government?

3            MS. JOHNSTON:  No, Your Honor, that's it.

4            THE COURT:  Anything else from the defendant, Mr.

5    Brennan?

6            MR. BRENNAN:  No, Your Honor, thank you.

7            THE COURT:  The defendant is remanded to the custody

8    of the Marshal.  Counsel are excused.  Court's in recess.

9            (The proceedings were concluded.)

10

11            I, Christine Asif, RPR, CRR, do hereby certify that
     the foregoing is a correct transcript from the stenographic
     record of proceedings in the above-entitled matter.

12

13            _____/s/_____
                   Christine T. Asif
                 Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

< Dates >
August 27th, 2012
   1:13.
$100 12:14,
   28:20.
$3 12:19.
$500. 28:21.
.
.
< 1 >.
1 2:21, 27:9,
   27:20, 28:3.
10 17:17, 17:21.
100 12:24.
10th 2:19.
12 15:15, 15:24,
   16:1, 16:6.
12. 18:9.
13 22:12.
14 16:2, 30:16,
   30:21.
14. 17:18.
15-year 19:3.
15. 18:15, 18:19,
   20:2.
151 18:17.
16 17:22.
16th 2:20.
17 31:16.
18 21:24, 27:1.
18. 18:11.
180. 18:18.
188 18:17.
188. 18:17.
.
.
< 2 >.
2 2:21, 4:2, 4:4,
   27:10, 27:19,
   27:21.
2(d 4:1.
2. 28:1, 28:2.
20 8:19, 8:22,
   13:24, 17:21,
   20:6, 27:2,
   27:3.
20-year 26:1.
20s 5:24, 22:18.
210 18:6, 18:7.
240 27:2, 27:11,

27:18, 27:21,
   27:22.
26 4:13, 5:1,
   15:10, 16:1,
   22:11, 25:7.
26. 4:16.
262. 18:6, 18:7.
29 4:14, 18:16.
2A1 18:2.
.
.
< 3 >.
3 2:21, 27:12,
   27:20, 28:4.
30 4:19, 22:18.
32 18:5, 18:6.
35 12:24.
3553 8:21.
3553(a 21:24,
   30:8.
3553(a)(2 27:1.
360 4:18, 5:1,
   25:22.
37 17:19.
38 4:5, 4:16, 5:1,
   18:20, 25:23.
38. 4:3, 4:12,
   18:20.
3D1 4:1.
.
.
< 4 >.
46 17:19, 17:22,
   27:10, 27:12,
   27:13, 27:15,
   27:19.
.
.
< 5 >.
5 2:21, 17:25,
   27:13, 27:20,
   28:4.
57 17:22.
.
.
< 6 >.
6 3:24.
.
.
< 7 >.

7 2:21, 27:14,
   27:20.
7. 3:25, 28:4.
.
.
< 8 >.
80s 15:21.
_____/s/_____
   _____
   33:15.
.
.
< A >.
ability 14:11,
   28:7.
able 8:16, 10:1,
   13:12, 31:18.
above-entitled
   1:18, 33:13.
absolute 21:4.
abuse 31:10,
   31:23.
abusing 7:12.
acceptance 4:11.
accident 12:4,
   19:11, 23:23,
   23:25.
accompanied
   2:12.
accompanies 4:2.
according 6:6.
account 22:23,
   25:21, 26:15,
   26:16, 26:22,
   26:23.
accountable
   15:25.
achieve 20:6.
act 9:7, 9:20,
   11:25, 12:1,
   12:2, 12:6,
   12:16, 12:18,
   18:25.
activity 24:20.
acts 6:17,
   11:15.
actual 27:5.
actually 10:6,
   12:5, 15:2.
add 14:18.

addict 16:9.
addicted 16:9,
   16:12.
addiction 7:24,
   8:1, 25:12.
addition 31:23.
address 14:6,
   21:4, 26:20.
adjudicated
   21:19.
adjustment 4:6.
adjustments 4:7,
   4:9.
adopt 21:17.
adopted 4:22.
adult 6:11,
   22:22.
adults 19:15.
advice 25:19.
advising 30:16.
advisory 4:25,
   15:7.
affect 26:2.
Agent 1:43, 2:9.
ago 12:25,
   13:13.
agreement 3:19.
akin 19:2.
albeit 7:6.
alcohol 19:9,
   31:10, 32:2.
allowed 32:1.
alluded 16:8.
almost 9:5.
already 20:16,
   22:11, 23:1,
   23:13, 31:3.
alter 29:5.
Although 24:24.
AMERICA 1:5.
analogies 19:16.
analogy 19:7.
analysis 17:25.
Anglo-american
   12:22.
animus 23:5.
answer 9:23, 18:5,
   18:24, 26:8.
anybody 9:23,
   17:4.

appeal 30:11,
   30:12, 30:17,
   30:18, 30:21,
   30:22, 31:1.
appear 7:22,
   9:4.
appeared 17:9.
appears 7:25.
appellate 30:15.
apply 21:23,
   22:1.
appreciate 8:25,
   13:17, 14:10,
   14:11, 19:17.
approach 2:17.
appropriate 8:12,
   9:24, 20:7,
   21:18, 21:21,
   22:2, 23:3,
   26:7, 30:7.
approved 31:9.
April 2:19.
area 29:12.
Arguably 4:14,
   17:5.
argument 19:21.
articulated
   21:16.
Arun 1:33, 2:8.
aside 17:5.
Asif 1:47, 33:11,
   33:16.
asleep 12:5.
assaults 22:7.
assesses 24:3.
assessment
   28:20.
assigns 14:8.
assist 8:5.
assistance
   26:12.
asthma 29:11.
attempted 6:2.
attempting 6:3,
   6:4, 6:14,
   8:5.
attempts 6:14.
attention 5:21.
attorney 3:5.
August 29:10.

Augustin 14:8.
AUSA 1:31, 1:33.
authority 26:20.
auto 11:21.
available 6:18,
   30:2.
avoid 6:4.
away 6:3, 6:5,
   6:15, 6:19,
   12:8, 31:16.
.
.
< B >.
B-e-r-l-i-n
   29:19.
back 5:7, 5:13,
   10:6, 15:12,
   15:24, 18:21,
   25:8.
background 14:3.
bad 13:5, 23:16,
   23:23.
Baltimore 1:11,
   29:4.
bang 12:13.
bar 11:15, 19:8.
barreling 11:16.
base 4:3, 18:9,
   18:10.
based 5:17, 20:4,
   23:18, 25:13.
basically 15:14,
   16:16.
bear 4:4, 11:7,
   20:1.
becomes 22:25,
   27:6.
began 6:13,
   32:23.
behalf 2:12,
   17:9.
behind 11:16,
   20:24.
believe 8:12,
   14:15, 20:3,
   28:9, 30:13,
   31:20.
bench 16:23.
benefit 15:18.
Berlin 29:10,

29:14, 29:19,
    29:23.
beside 20:22.
best 8:12, 14:11,
    31:19.
beyond 14:1,
    16:23.
big 13:8.
Bill 16:5.
bit 15:12.
bond 32:5.
boyfriend 6:9.
Bredar 1:20.
Brennan 2:10,
    2:12, 2:16, 3:3,
    3:10, 3:17,
    5:13, 14:21,
    20:11, 25:11,
    29:1, 33:5.
Brett 1:39,
    2:13.
brief 5:7.
bring 5:20,
    10:7.
brother 6:24.
burdens 9:24.
Bureau 29:2, 29:9,
    30:2, 32:11.
burglary 17:2.
BW 11:16.
.
.
< C >.
calculate 4:25.
calculated 5:17.
calculation 17:20,
    20:10.
calibrated 13:4.
call 2:3, 21:13.
Calvert 29:5.
camera 5:4.
candor 19:17.
car 11:16,
    19:13.
cared 6:24.
career 18:4.
caring 6:24.
carried 17:25.
cases 15:23.
Category 4:17,

10:12, 16:2,
    16:7, 16:17,
    16:22, 17:2,
    17:18, 17:23,
    18:16, 22:13.
caught 16:24.
causation 24:9.
caused 7:14.
Certainly 13:23,
    16:17, 19:14,
    19:17, 19:18,
    19:21, 23:5,
    23:7, 24:9,
    24:13, 24:24.
certify 33:11.
chain 24:8.
challenging
    14:12.
change 31:17.
changing 11:17,
    12:17.
characteristics
    4:8, 22:4.
charge 9:6.
charges 21:9.
child 8:5, 8:6,
    9:3.
choices 6:11,
    19:15.
chose 19:13.
Christine 1:47,
    33:11, 33:16.
circumstances
    8:13, 8:17,
    10:18, 22:24,
    24:3.
civil 9:11, 12:13,
    12:20, 23:19.
CJA-23 31:2.
clear 5:3.
CLERK 32:20.
Client 2:17, 3:11,
    5:14, 19:20,
    29:8, 29:10,
    29:12.
close 29:4,
    29:5.
closer 19:2.
co-counsel 2:8.
Code 21:24,

27:1.
comes 11:17,
    24:18, 25:2,
    28:22.
Commission 4:18,
    25:25, 32:11.
Commitment 4:24,
    32:9.
committed 25:9.
committing
    13:20.
common 11:13.
community 7:8,
    8:8.
compensate
    23:20.
compensatory
    12:21, 13:3.
completely
    13:13.
complicated 22:25,
    27:6.
comply 26:25.
computation 3:23,
    4:14, 4:22,
    4:23.
computed 4:21.
concerned 15:6,
    24:22.
concerning
    10:17.
concluded. 33:9.
concludes 5:11.
conclusion 2:20,
    21:16.
concurrently
    27:17, 27:20,
    28:5.
conditions 31:6.
conduct 5:4, 9:13,
    10:20, 18:9,
    18:10, 19:4,
    19:5, 19:23,
    20:4, 22:16,
    24:8, 24:14,
    24:23.
confirm 3:10.
Congress 9:6,
    13:18, 26:1,
    27:4.

connect 10:6.
consequence 12:18,
     13:19, 26:3,
     30:22.
consequences 9:2,
     11:24, 12:1,
     12:9, 12:10,
     12:16, 23:24,
     24:12, 24:15.
consideration
     22:3, 24:24.
considered 24:4.
consistent 22:8,
     27:3, 29:3,
     29:24.
consume 31:24,
     32:2.
consumed 19:9.
contact 6:7,
     6:13.
contribute 8:6.
contributed 8:1.
contribution
     7:6.
conversations
     16:22.
convicted 27:7,
     28:19.
conviction 27:9,
     27:25, 28:20,
     30:12, 32:6.
Cook 1:39, 2:13,
     2:15, 2:16,
     5:14, 14:21,
     16:3.
correct 3:20,
     28:11, 28:12,
     29:20, 32:5,
     33:12.
Correctional
     29:23.
Counsel 2:8,
     14:22, 29:21,
     33:8.
counseling
     31:10.
Count 4:2, 4:4,
     27:9, 27:10,
     27:12, 27:13,
     27:14, 27:19,

27:21, 28:1,
     28:2, 28:3,
     28:4, 28:20.
counting 15:11.
Counts 2:21, 27:7,
     27:9, 27:20,
     28:2, 28:19,
     32:21, 32:25.
County 12:3,
     15:20, 29:5.
couple 8:24.
course 6:11,
     14:11, 18:11,
     21:14, 31:23,
     31:24.
courtroom 5:4,
     5:6, 5:8, 5:12,
     6:23, 14:6.
cover 31:6.
credible 25:12.
crime 7:13, 13:21,
     18:20, 22:6,
     22:9, 23:11,
     23:12.
crimes 22:10.
CRR 1:47, 33:11.
culpability 9:12,
     9:19, 13:4,
     20:8.
culpable 23:9.
custody 33:7.
.
.
< D >.
damages 12:19,
     23:20.
dangers 7:12.
David 1:43, 2:9.
day 9:5, 11:25.
days 30:16,
     30:21.
dealer 11:3,
     24:23.
dealers 7:22,
     10:21, 10:22.
dealing 11:8.
dearly 6:24.
death 5:19, 6:3,
     6:21, 8:8, 8:10,
     9:8, 9:17,

10:23, 12:19,
     13:20, 13:22,
     14:7, 17:15,
     17:16, 19:1,
     24:9, 24:16,
     25:24, 26:3.
Deborah 2:7.
Deborah A.
     Johnston 1:31.
debt 13:21.
decide 9:24, 12:4,
     26:7.
decides 19:9.
deciding 21:22,
     26:12.
decision 10:25,
     15:14, 26:23.
deemed 31:11.
deeper 26:10.
defendants 9:4,
     16:22.
defied 22:15.
degree 18:19,
     18:23, 19:24.
demographic
     22:15.
demonstration
     16:11.
department 3:23,
     4:21.
deputy 5:12.
describes 6:23.
designate 29:2.
designation
     29:13.
desire 23:6,
     23:7.
detached 26:9.
determining 22:2,
     23:2.
deterrence 24:11,
     24:17, 24:18.
deterring 24:14.
dialogue 14:12.
die 10:4, 11:6,
     19:5, 19:14,
     25:6.
died 5:24, 6:1,
     9:2, 10:3,
     10:10, 13:6,

13:10.
difference 9:20,
    13:2, 26:19,
    26:21.
different 4:14,
    9:11, 9:25,
    10:8, 10:12,
    10:19, 11:25,
    13:9, 15:23,
    21:16.
difficulties
    31:22.
difficulty
    31:15.
dilemma 10:15.
direct 5:5.
directed 21:23.
directions 13:9.
disclosure 3:8.
discount 16:6.
discretion
    13:24.
discussed 3:6.
discussing 15:6.
discussion 15:3,
    16:5, 17:5,
    23:14, 25:4.
discussions 10:17,
    16:3, 17:13,
    29:8.
dismiss 32:15.
dismissed 32:23,
    32:25.
disposition
    23:3.
dispute 3:16.
distinction 9:7.
distinguishes
    7:21, 26:3.
distribute 10:25,
    13:19.
distributing 7:19,
    9:6.
Distribution 5:19,
    7:14, 9:7,
    16:14, 17:15,
    17:24, 19:4,
    24:5.
distributions
    26:4.

District 1:1, 1:2,
    1:20.
DIVISION 1:3.
door 5:13.
double 15:11.
doubt 15:19,
    25:10, 31:16.
down 11:16,
    12:20.
downward 4:10.
drawn 9:7.
drink 19:13.
driven 25:23.
driver 11:14,
    12:8, 19:8,
    19:11.
drivers 11:14.
drives 11:18.
driving 11:23,
    12:9.
drug 7:21, 11:3,
    11:8, 24:20,
    24:23, 26:3,
    30:1.
drugs 7:12, 7:13,
    7:19, 9:6, 11:4,
    13:19, 16:10,
    16:12, 21:10,
    24:5, 24:7,
    25:1, 31:25.
Drunk 11:14,
    11:23, 12:7,
    19:8, 19:10.
due 14:9.
during 25:16,
    25:18, 32:2.
.
.
< E >.
earlier 16:8,
    16:14.
early 15:21.
earned 22:11.
education 14:2.
educational 31:13,
    31:19.
egregious 26:15.
eight 18:12.
eight. 19:6.
either 30:14.

elaborate 23:1.
electronically
    31:1.
elements 14:3.
eligible 4:10.
employment 7:4.
ends 22:19.
endured 23:24.
enforced 13:25.
engage 14:12.
enough 6:16, 11:5,
    25:7.
ensure 31:20.
entire 22:21.
equation 15:5.
equivalent 18:23,
    19:23, 19:25.
Esquire 1:37,
    1:39.
establishing
    26:1.
evaluation
    31:10.
evening 19:14.
everything 17:3.
evidence 9:16,
    13:14, 21:18,
    23:3, 23:7,
    23:9, 25:13,
    26:17.
exact 17:20.
exactly 16:4,
    27:8.
example 11:12,
    26:5.
excuse 5:1.
excused 33:8.
executed 31:3.
experience 14:2.
explicitly 31:6.
express 22:6.
extreme 9:15.
extremely 22:25.
.
.
< F >.
face 31:16.
facility 29:3,
    29:9, 29:11,
    29:14, 29:24.

fact 7:16, 7:25,
    15:7, 19:19,
    23:11, 25:6,
    25:23, 26:18.
factor 22:3,
    22:23, 24:4,
    24:21, 25:3,
    25:14, 25:20.
factored 24:2.
factors 8:21,
    21:23, 21:25,
    30:8.
facts 5:20, 11:13,
    20:4.
fair 13:15,
    26:7.
faithful 25:25.
fall 30:6.
fallen 12:5.
family 7:9, 7:15,
    9:3, 20:12,
    20:19, 20:23,
    23:24.
far 8:15, 11:12,
    15:5, 20:23,
    23:12.
father 6:24, 7:1,
    7:10.
fault 19:12.
FCI 29:16,
    29:18.
Federal 25:19,
    29:23.
feet 24:10.
felony 23:12,
    28:19.
few 13:13.
fifth 24:21,
    25:2.
figure 27:3.
file 30:15, 30:20,
    31:2.
filed 32:10.
financing 16:16.
find 4:20, 13:10,
    21:18, 25:12,
    26:5, 26:11,
    28:7, 28:15.
findings 2:22,
    21:17, 30:8.

finds 8:21.
fine 28:8.
finished 5:8.
First 5:15, 11:22,
    15:18, 15:20,
    22:3, 31:7.
Fitzgerald 2:5.
Five 11:22, 27:9,
    27:24, 28:1,
    28:6, 28:19.
flat 11:17,
    11:19.
flip 16:21.
follow 19:7.
forbid 9:17.
foregoing 33:12.
forfeiture 28:14,
    28:18.
forget 7:15.
form 31:2.
forth 8:23.
found 2:21, 9:5,
    15:11.
four 28:2.
Fourth 24:11.
Frankly 10:16,
    16:4, 23:13,
    24:7, 29:4.
free 6:12,
    19:18.
frequently 7:22.
friend 20:23,
    23:11.
Friends 20:19.
front 11:13.
function 9:12,
    12:23, 14:1,
    23:17, 23:20,
    23:23.
functional 18:22,
    19:23, 19:25.
fundamental 13:2,
    23:15, 26:18.
.
.
< G >.
G. 1:33.
general 24:18.
generate 25:7.
George 12:3,

    15:20.
gets 7:11, 12:8,
    12:9, 13:25,
    17:24, 22:12.
getting 10:22,
    15:16, 16:5.
Gina 1:44.
give 26:2,
    26:22.
Given 8:3, 15:2,
    15:22, 21:18,
    26:18.
gives 12:12,
    24:13.
goals 20:7.
God 9:17.
gotten 6:6.
Government 1:29,
    2:7, 2:25, 3:1,
    5:15, 8:17, 9:1,
    12:14, 19:17,
    19:21, 28:10,
    28:15, 30:10,
    32:13, 32:14,
    33:2.
grams 17:17,
    17:21.
grateful 2:18.
gray 22:20.
great 7:6, 9:7,
    11:15.
greater 13:21,
    20:5, 26:25.
greatly 23:1.
group 3:25, 4:5,
    13:8.
guess 29:4.
guide 22:1.
guideline 4:17,
    5:17, 20:10,
    30:6.
Guidelines 3:23,
    4:1, 4:20, 4:25,
    8:23, 15:7,
    15:9, 17:14,
    22:11, 25:20,
    25:22, 26:6,
    26:7, 26:14,
    26:19, 26:22.
guilt 2:22.

guilty 2:21, 9:5,
   9:6, 9:13,
   11:21, 12:24,
   21:19, 23:17.
.
.
< H >.
hair 22:20.
Hampshire 29:10,
   29:15, 29:23.
hand 9:4.
hands 14:1,
   23:21.
happen 11:19.
happened 13:9,
   13:10.
happens 16:21,
   27:2.
Happy 14:22.
hard 9:1, 13:14,
   13:15, 17:6.
harm 9:17, 23:6,
   26:17.
Harrison 5:19,
   5:21, 5:23, 6:1,
   6:10, 7:9,
   21:9.
harshly 10:21,
   11:9, 12:10.
hear 5:14, 9:15,
   13:7, 14:22.
heard 8:13, 13:14,
   14:13, 14:20,
   23:3, 23:5,
   25:13.
hearing 5:12.
heavily 6:21.
hereby 33:11.
high 25:23.
highest 4:1,
   22:13.
History 4:13,
   4:15, 4:17, 8:2,
   8:3, 9:14,
   15:11, 15:15,
   16:2, 16:6,
   16:7, 16:17,
   17:18, 17:23,
   18:16, 22:4,
   22:5, 22:13,

25:3, 25:8,
   26:16.
hit 11:20, 12:4,
   12:17.
hobby 16:16.
Honorable 1:20.
Hope 20:22.
horrendous 22:5.
HVAC 29:12,
   31:15.
.
.
< I >.
identified
   21:25.
identify 3:15.
illegal 7:13,
   9:14, 24:5,
   31:25.
imagine 15:4.
impact 6:20,
   8:15.
important 26:10.
impose 8:7, 8:16,
   8:20, 21:22,
   26:13, 28:1,
   28:2.
imposed 15:21,
   26:12, 27:8,
   27:16, 27:18,
   27:19, 30:13.
imposition 27:5.
imprisonment 27:2,
   27:10, 27:11,
   27:13, 27:14,
   27:15.
inappropriate
   30:14.
incarcerated
   28:25, 30:1.
incarceration
   25:17, 28:24,
   29:22.
inclination
   29:1.
include 31:10.
Including 3:6,
   30:5.
Indictment 2:22,
   32:17, 32:19,

32:22, 33:1.
indictments
   32:16.
individual 8:4.
individuals 6:7,
   7:23, 11:9.
inherent 10:25,
   11:4.
initial 3:7.
injure 23:7.
injured 23:21.
injury 9:17.
innocent 21:8.
instance 10:23.
Institution 3:14,
   29:23.
intend 19:14,
   24:13, 26:13,
   30:16.
intending 26:17.
intent 9:19,
   12:24, 17:12,
   17:13, 18:21,
   18:22, 18:25,
   19:20, 20:8,
   23:17, 23:18.
intention 9:13,
   13:5, 23:8,
   23:10, 23:23.
intentionally
   12:7.
intentions
   23:16.
interesting
   17:11.
interoffice
   15:3.
introduce 17:10,
   20:12.
investigation
   15:9, 15:10.
invite 5:7.
invoking 26:20.
involuntary 18:8,
   18:10, 18:12.
involved 7:7,
   22:21.
involvement
   24:19.
irresponsibility

11:15.
issue 26:20.
issues 3:15, 3:17,
  14:25, 15:6.
.
.
< J >.
J. 1:39.
Jacobs 1:43,
  2:9.
James 1:20.
JKB-10-0271 2:6.
JKB-10-0271 1:7.
job 13:15.
John 20:19.
Johnston 2:3, 2:7,
  2:25, 8:24,
  14:14, 14:25,
  15:7, 17:5,
  23:14, 24:6,
  28:11, 28:16,
  32:12.
Judge 1:20,
  13:14.
Judgment 4:24,
  14:1, 24:2,
  26:9, 26:24,
  32:8.
jury 2:19, 14:6,
  21:15, 21:17,
  32:22.
justice 9:10,
  11:12, 13:2,
  14:8, 22:21,
  23:15, 25:7.
justification
  24:14.
.
.
< K >.
K. 1:20.
Kevin 20:24.
kicked 15:24.
kill 23:8,
  24:24.
killed 12:6,
  12:18, 17:4,
  17:6, 19:12.
kills 11:18.
Kimbrough 26:21.

kinds 16:22.
knowing 9:1,
  19:4.
knows 5:17,
  18:11.
.
.
< L >.
lain 24:9.
last 3:13.
late 22:17.
Law 6:9, 6:22,
  12:24, 13:1,
  13:25, 25:9.
lawyer 21:11.
learned 5:24.
least 17:3, 24:7,
  27:24.
leave 19:8,
  21:11.
leaves 4:11, 16:1,
  16:7.
left 8:12,
  20:23.
legal 14:2.
lengthy 7:18, 8:1,
  22:9.
less 15:6, 17:25,
  26:22.
lesson 7:11.
letter 14:16,
  14:19, 20:25,
  21:11.
letters 8:15,
  17:8, 20:15.
level 4:2, 4:3,
  4:5, 4:12, 4:16,
  17:18, 17:22,
  18:20, 25:23,
  29:3, 29:17,
  29:25.
lie 23:2.
life 4:18, 4:19,
  5:2, 7:25, 8:23,
  12:9, 16:11,
  22:6, 22:7,
  22:14, 22:22,
  25:12, 25:22,
  31:23.
lifetime 7:1.

light 4:3, 30:7,
  31:22.
Lisa 6:22.
listen 21:7.
little 15:12,
  26:22.
live-in 6:9.
lived 6:10,
  22:6.
location 6:2,
  6:10.
long 7:25, 16:11,
  25:12.
look 10:19,
  19:19.
looked 17:14,
  18:1.
looking 11:21,
  18:3, 25:14.
loss 7:8, 7:15,
  8:4, 8:7.
lost 25:4.
lot 15:2, 15:3,
  15:9, 16:15,
  17:9.
lots 10:4.
lucky 13:11.
.
.
< M >.
M. 6:9.
maintained 7:4.
man 5:23, 9:2,
  10:2, 14:8,
  18:12, 22:14,
  22:20.
mandatory 8:18,
  20:5, 20:9,
  26:1, 27:3.
manslaughter
  11:21, 18:1,
  18:4, 18:8,
  18:10, 18:14,
  18:15, 18:24,
  19:3, 20:1,
  23:13.
March 6:18.
Marshal 33:8.
Maryland 1:2,
  1:11, 29:4,

29:6.
matter 2:5, 2:6,
  2:19, 5:22,
  19:19, 33:13.
maximum 8:22,
  18:11, 18:14,
  18:17, 19:6.
mean 13:8,
  16:18.
meaning 3:25.
measure 23:16,
  23:19.
measuring 9:12.
mechanical 26:8.
member 7:3.
mens 17:13.
mental 23:9.
mentioned 16:14.
message 24:19,
  25:25.
met 3:13.
method 4:14.
meting 12:23.
million 12:19.
minimum 8:18,
  20:6, 20:9,
  26:1, 27:3.
minor 6:25.
minus 16:1.
minutes 13:13.
misbehavior 13:4,
  22:19, 24:1.
misfortune 10:9.
mitigation 17:6.
modest 23:4.
money 7:23, 11:5,
  16:15.
month 6:2,
  27:19.
months 4:18, 5:1,
  17:19, 17:22,
  25:22, 27:2,
  27:10, 27:11,
  27:12, 27:14,
  27:15, 27:18,
  27:21, 27:22.
moral 9:10, 23:15,
  24:14.
morning 2:2, 2:10,
  2:11, 2:15,

16:24, 20:21,
  21:2, 32:23.
Morris 6:22, 6:23,
  14:15, 14:18.
Mostly 22:9.
mother 6:9, 6:22,
  7:5.
motion 28:15.
move 32:15.
moved 5:25.
moving 6:2.
Moye 4:24, 30:5,
  32:18.
MR. BRENNAN 2:11,
  3:4, 3:12, 3:18,
  14:24, 15:2,
  15:13, 17:7,
  17:21, 18:6,
  18:8, 18:14,
  18:19, 20:13,
  29:7, 29:18,
  29:20, 30:3,
  30:25, 32:5,
  33:6.
MR. COOK 20:14,
  20:18, 20:22.
Ms 2:2, 2:25,
  4:24, 6:22,
  6:23, 8:24,
  14:13, 14:15,
  14:18, 14:25,
  15:6, 17:5,
  23:14, 24:6,
  28:11, 28:16,
  30:5, 32:12,
  32:18.
MS. JOHNSTON 2:4,
  3:1, 3:21, 5:16,
  10:16, 11:24,
  13:17, 14:4,
  14:15, 14:18,
  28:12, 28:17,
  32:14, 32:24,
  33:3.
multiple 27:7.
murder 18:19,
  18:23, 19:24,
  23:12.
murders 22:7.
myself 16:23,

16:24.
.
.
< N >.
nature 5:18, 8:3,
  22:23, 24:3.
necessarily
  5:22.
necessary 20:6,
  23:20, 26:25,
  31:11.
need 5:6, 10:19,
  24:11, 24:16,
  24:21, 25:15,
  31:18, 31:19.
needs 4:16, 25:10,
  25:16.
neglected 31:6.
negligent 18:9,
  23:21.
negligently 12:2,
  12:6.
nephew 20:24.
New 29:9, 29:10,
  29:11, 29:14,
  29:23.
night 11:19.
NO. 1:5, 18:24.
none 32:4.
nonetheless 22:8,
  22:10, 30:7.
nor 9:15.
normal 22:15.
NORTHERN 1:3.
note 31:1.
noted 22:11.
nothing 24:16.
notice 30:15,
  30:21.
notion 26:2.
number 2:6, 4:3,
  4:16, 6:8, 7:20,
  15:17, 15:22,
  17:8, 20:14,
  22:12, 31:7.
.
.
< O >.
oath 13:25.
obligation

30:20.
obstruction 4:9.
occur 22:17.
occurred 17:15,
    25:24.
occurs 19:11.
offender 18:4.
offending 22:17.
offense 4:2, 4:3,
    4:7, 4:8, 4:12,
    4:16, 5:18, 8:4,
    11:22, 18:9,
    18:10, 21:20,
    22:24, 24:3,
    24:5, 25:5,
    25:23, 26:2.
offenses 3:25,
    4:4, 4:5.
offered 23:13.
office 2:13.
officer 31:9,
    31:11.
Official 1:49,
    33:17.
Ogle 20:25.
Okay 3:15, 3:19,
    3:22, 5:11,
    11:2, 14:21,
    21:13, 30:24,
    33:2.
old 6:25.
older 7:11,
    22:20.
One 9:8, 9:23,
    10:10, 11:17,
    11:21, 12:8,
    12:12, 13:3,
    13:9, 17:3,
    17:11, 17:12,
    17:14, 18:5,
    19:9, 21:16,
    28:3, 28:4.
open 5:13, 29:9,
    29:14.
operate 4:15.
operating 25:1.
operative 12:11.
opportunities
    28:25.
opportunity

8:14.
order 4:24, 27:23,
    28:19, 32:9.
ordered 2:23,
    27:10, 27:11,
    27:12, 27:13,
    27:14, 27:20,
    28:8, 28:13,
    28:18, 30:9.
original 32:15.
origins 12:22.
others 10:10,
    24:25.
outstanding
    3:16.
overall 26:24.
overdose 5:24,
    11:3.
overdosed 10:3.
overstated 9:4.
owe 12:14, 12:18,
    13:20, 13:21.
own 6:11, 24:1.
.
.
.
< P >.
page 3:24, 3:25.
paint 12:15.
parents 20:20.
Parkway 11:17.
part 13:25,
    23:6.
participants
    5:5.
participate 31:8,
    31:13.
participation
    6:12.
particular 10:2,
    10:23, 11:25,
    25:5.
particularly 7:9,
    16:12, 26:6.
party 23:21.
pass 6:18.
passed 21:5.
passenger 19:10,
    19:11, 19:12,
    19:13.
Patrick 2:5,

2:12.
PATRICK FITZGERALD
    SWEENEY 1:11.
pattern 22:9,
    22:15.
pay 7:12, 28:7,
    28:20.
PBJ 11:23.
penalty 9:24,
    14:7, 21:21,
    21:22, 23:17.
pending 28:15,
    32:16.
people 9:20, 9:25,
    10:4, 10:12,
    11:14, 12:6,
    13:7, 17:8,
    19:8, 20:15,
    24:24.
perhaps 7:10,
    7:20, 10:19,
    19:25.
period 22:9,
    25:17, 25:18,
    32:2.
permanent 9:3.
person 10:6, 10:7,
    11:1, 11:6,
    11:17, 11:18,
    11:21, 11:22,
    12:16, 12:19,
    16:9, 16:11,
    19:10, 22:17.
personally 3:13.
persons 5:5.
perspective
    10:20.
phase 14:7.
place 9:2, 10:5,
    28:23, 29:22.
placing 32:1.
Plaintiff 1:7.
play 24:18,
    25:2.
plead 9:5.
please 2:2.
podium 2:17,
    14:22.
point 5:3, 17:7,
    17:10, 20:3,

24:6.
points 4:13,
  15:11, 15:15,
  15:24, 16:6,
  22:11, 25:8.
policy 26:19,
  26:21.
poor 24:1.
portion 5:8, 5:10,
  5:11.
position 8:25,
  13:11.
possess 31:24,
  32:2.
possible 29:4,
  29:5.
powerful 24:16.
preparation 2:23,
  15:9.
prepare 32:8.
prepared 3:2,
  29:25, 30:25.
Present 1:43,
  6:23, 25:16.
presented 21:19.
presentence 2:23,
  3:6, 3:11.
price 7:12.
Prince 12:3,
  15:20.
principle 24:18,
  25:1.
principles
  26:10.
prior 32:24.
prison 4:19,
  11:22.
Prisons 29:2,
  29:9, 30:2,
  32:11.
probably 14:5.
Probation 1:44,
  3:23, 4:21,
  12:8, 15:24,
  31:9, 31:11.
problem 11:12,
  12:12, 13:14,
  13:16.
problematic 10:11,
  13:11, 15:5.

problems 14:2,
  23:2.
proceed 21:14.
proceeded 4:10.
proceeding 5:6,
  5:9.
proceedings 33:9,
  33:13.
process 5:3,
  11:12, 26:9.
profit 16:14.
program 30:2,
  30:4, 30:6,
  31:9, 31:13.
programmatic
  28:24.
prohibition
  32:1.
proof 23:5.
properly 4:21.
property 22:10.
proposed 3:24.
proposition
  27:6.
protect 24:21.
protected 25:10.
protecting
  24:22.
prove 10:1,
  10:23.
provide 25:15.
provided 29:24.
public 24:21,
  24:23, 25:9,
  32:10.
punish 23:16.
punished 12:10.
punishes 8:9.
punishing 9:12.
punishment 12:12,
  12:23, 13:4,
  23:17, 23:22.
pure 17:23.
purely 7:23.
purposes 26:25.
pursuant 4:1.
pursue 30:15.
put 11:9.
putting 10:11.
.

.
< Q >.
quantities 25:1.
quantity 17:16,
  23:4, 23:11.
question 9:22,
  21:20, 28:22.
questions 8:25,
  9:23.
quite 10:16,
  16:3.
quote 14:5,
  14:7.
.

.
< R >.
raise 8:5, 14:3.
raised 14:25.
raising 8:5.
ran 12:5, 12:16,
  12:20.
range 4:17, 5:1,
  5:17, 17:24,
  30:7.
Rao 1:33, 2:8,
  10:16.
rapes 22:7.
RDAP 30:4, 30:5.
rea 17:13.
read 3:6, 3:11,
  14:17, 21:11.
readily 6:18.
ready 2:25, 3:3.
real 23:2.
really 3:24, 10:9,
  15:17, 16:8,
  16:13, 26:11.
reapproach
  14:22.
reasonable 8:21,
  19:20.
reasons 32:9.
receive 25:17,
  30:1.
received 15:18,
  28:9, 28:14.
recently 3:12,
  5:25, 12:3,
  17:1.
recess 5:7,

33:8.
recidivist
 31:21.
reckless 18:10,
 19:4, 19:5,
 23:22.
recklessly 12:6.
recognize 7:2,
 7:17, 7:24,
 8:18, 25:24.
recognizing
 11:7.
recommend 25:21,
 29:22, 29:25.
recommendations
 28:23.
recommended
 4:18.
reconciling 9:9.
record 5:13, 7:18,
 31:4, 33:13.
records 32:10.
redacted. 5:10.
reduced 4:16,
 10:22.
reduction 4:11.
reference 25:11.
reflect 4:11,
 4:25.
reflected 20:9.
reflective 8:7.
regard 28:11,
 28:16.
regards 5:21.
relating 31:9.
relationship 4:4,
 7:5.
release 27:23,
 27:25, 28:1,
 28:3, 28:5,
 28:6, 31:7,
 31:18, 31:25,
 32:6.
remain 3:16.
remanded 33:7.
report 2:23, 3:6,
 3:7, 3:11, 3:20,
 25:13.
Reporter 1:49,
 33:17.

represent 7:10.
representing
 2:7.
request 28:9,
 28:14, 29:1,
 29:21, 30:4,
 30:9, 32:3.
requested 29:13.
required 8:20,
 15:8, 21:6.
requirement
 19:1.
requires 15:10.
residence 6:1.
resounding
 18:24.
respect 13:13,
 27:8, 27:25,
 28:2, 28:8,
 28:14, 28:23,
 28:24.
respects 7:21.
responds 13:3.
responsibility
 4:11, 6:12,
 12:1, 19:18,
 20:1.
responsible 7:3.
rest 24:19.
restitution 28:8,
 28:9, 28:13,
 30:8, 30:10.
restriction
 31:24.
result 6:19, 8:8,
 9:18, 13:22,
 15:23, 23:25,
 24:1, 24:15.
resulted 5:19,
 8:4, 10:24,
 15:16, 17:16.
results 9:8.
revealed 23:9.
reveals 15:10.
review 3:22, 8:14,
 22:1, 27:8.
reviewed 4:22,
 20:16, 25:14.
revised 3:20.
revisions 3:7.

revoked 32:6.
rhetorical 9:22.
ride 19:9.
rights 30:15.
rise 24:13.
risk 11:1, 11:4,
 11:7, 11:10,
 13:20, 24:8.
road 12:5, 12:13,
 12:17.
robberies 16:10.
Robert 20:25.
role 4:8, 8:9.
roommates 5:25.
root 12:21.
routine 23:4.
row 20:18.
RPR 1:47, 33:11.
rules 4:15.
run 12:4, 12:13,
 27:17.
.
.
.
< S >.
sadly 9:4.
Saint 14:7.
sale 9:18, 23:4,
 24:15.
satisfactorily
 31:8, 31:12.
saying 19:17.
says 14:8, 16:5.
scene 19:8.
scheduled 2:24.
school 13:1.
scores 18:16,
 18:19, 18:20.
seal 5:5.
Sealed 5:10,
 5:11.
Seated 2:2, 2:8,
 2:14, 5:14,
 20:18, 20:22,
 20:23, 20:24.
Second 2:22,
 18:19, 18:23,
 19:24, 20:18,
 22:23, 31:12,
 32:17, 32:21,
 32:25.

Section 4:1,
   21:24, 27:1,
   30:8.
security 29:3,
   29:17, 29:25.
seems 26:9.
sell 9:21, 9:25,
   11:2, 11:4,
   11:6, 11:9,
   21:9, 21:10,
   23:10, 24:25.
sellers 10:9.
selling 16:15.
sells 24:7.
Sending 24:19.
sense 17:14,
   23:22.
sent 25:25.
sentence 8:7,
   8:12, 8:16,
   8:19, 8:20,
   8:22, 8:23,
   10:22, 12:4,
   13:15, 15:8,
   18:12, 18:15,
   19:3, 20:5,
   21:5, 22:2,
   25:21, 26:7,
   26:12, 26:13,
   26:24, 27:4,
   27:5, 27:8,
   27:16, 27:21,
   30:6, 30:13.
sentenced 15:19.
sentences 15:21,
   27:17, 27:19.
Sentencing 1:18,
   2:7, 2:24, 2:25,
   3:22, 4:18,
   4:20, 5:17,
   8:23, 9:1, 20:7,
   22:10, 22:25,
   25:20, 25:24,
   26:11, 26:13,
   26:19, 26:23,
   32:11.
serious 11:8,
   24:6, 25:4.
seriousness
   24:4.

serve 27:10,
   27:11, 27:12,
   27:13, 27:15,
   27:24, 29:2.
served 27:20,
   27:21, 28:5.
session 5:4.
set 8:23, 21:23,
   26:25.
seven 21:25.
Seventh 25:19,
   25:20.
shall 31:8,
   31:12.
share 14:4.
shaved 15:12.
shortly 31:5.
shouldn't 21:11.
shred 9:16.
side 12:13, 12:17,
   15:5.
sides 3:16.
significance
   26:22.
significant 15:19,
   29:12.
Similarly 28:13.
sister 6:22.
sitting 13:11,
   13:12.
situation 17:1,
   18:25, 19:3.
situations 10:4.
six 6:25, 13:9.
sixth 25:14.
skill 31:14.
skilled 29:13.
slaughter 18:12.
slightly 27:6.
small 23:10,
   24:25.
society 7:4, 7:6,
   8:6, 13:20,
   13:21, 24:19.
sold 10:2, 10:6,
   10:12, 13:6.
somebody 16:25,
   17:1, 17:6.
somehow 10:8,
   10:11, 26:3.

someone 9:8,
   11:17, 11:19,
   12:3, 12:17,
   13:6, 13:19,
   19:5, 19:13,
   24:9.
somewhat 8:1.
somewhere 8:22.
son 6:25, 7:5,
   7:9, 7:11.
soon 5:8.
sort 15:14,
   24:12.
sorts 22:8.
special 28:20.
specific 4:7,
   28:9, 28:14.
specified 27:4.
spurts 22:16.
stand 8:11,
   21:14.
standpoint 9:19,
   22:25.
stands 22:19.
start 32:24.
started 6:6.
Starts 3:24.
state 23:9.
statement 32:9.
statements 6:7,
   6:20.
States 1:1, 1:5,
   1:20, 2:5,
   21:24, 26:21,
   27:1, 32:10.
statute 8:19.
statutory 18:17,
   19:6.
Steinberger
   20:22.
stenographic
   33:12.
step 5:6, 17:25,
   18:21.
stop 6:15.
streets 16:15.
strictly 15:8.
strong 6:16.
stuck 16:18.
studied 3:11.

submitted 6:21,
   8:15, 14:16.
substance 31:9,
   31:23.
suffer 30:21.
suffered 7:24,
   8:8, 23:21.
suffers 7:8,
   29:10.
sufficient
   26:24.
suggest 8:11,
   10:18.
suggesting 9:16.
Superseding 2:22,
   32:15, 32:17,
   32:19, 32:22,
   33:1.
supervised 27:23,
   27:25, 28:1,
   28:3, 28:5,
   28:6, 31:7,
   31:25.
supervision 25:18,
   32:2.
support 31:18.
suppose 10:5.
supposed 29:9.
surgeon 12:15.
surrender 32:4.
suspended 15:19,
   15:22.
Swillo 1:44.
system 9:11,
   12:13, 12:20,
   12:21, 12:22,
   22:21, 23:15,
   23:18, 23:19,
   25:7, 26:11.
systems 13:3.
.
.
< T >.
T. 1:47, 33:16.
table 2:8,
   13:12.
talked 17:12.
taught 13:1.
technician
   31:15.

teens 22:17.
temporarily 5:4.
ten 12:25,
   15:22.
term 4:1, 27:23,
   27:24.
terms 7:11, 10:11,
   18:1, 19:7,
   19:22, 28:5.
terrible 24:15.
testimony 8:14,
   31:14.
testing 31:11.
theft 16:10,
   17:2.
theirs 4:22.
they'll 29:11.
thinking 12:2,
   16:24.
Third 24:4,
   31:22.
though 25:2,
   26:5.
thoughts 10:14.
three 28:2,
   31:7.
Thursday 3:13.
Tina 6:9.
tire 11:18, 11:19,
   12:17.
Title 21:24.
today 2:24, 6:23,
   11:14, 14:15,
   28:20, 30:16,
   30:21, 31:1.
tolerated 24:20.
took 12:24.
tool 31:20.
top 22:12.
topic 9:14.
Toszer 13:7,
   21:10.
total 27:1, 27:4,
   27:21, 28:6,
   28:21.
toward 23:5.
trade 31:17.
tragic 16:11.
training 25:15,
   29:12.

transcript
   33:12.
treated 10:21.
treating 11:8.
treatment 25:15,
   25:16, 30:1,
   31:8.
tree 12:14,
   12:15.
tremendous 7:15.
trial 2:19, 2:20,
   4:10, 5:22,
   9:15, 23:4,
   31:14, 32:23,
   32:25.
tried 21:15,
   32:17.
trouble 9:9.
try 10:7.
trying 25:25,
   26:2, 26:6.
tune 13:24.
two 3:16, 11:14,
   13:2, 19:8,
   22:12.
.
.
< U >.
ultimate 7:12,
   19:1.
underpinning 9:10,
   23:15.
understand 29:8,
   30:18, 30:20.
understanding
   9:10.
unhelpful 26:6.
United 1:1, 1:5,
   1:20, 2:5,
   21:24, 26:20,
   27:1, 32:10.
unlawful 30:14.
unlock 5:12.
update 31:19.
upward 4:5.
user 7:19.
users 10:10.
uses 16:10.
using 6:13, 6:15,
   6:19, 7:2, 7:3,

7:13.
utterly 26:9.
.
.
< V >.
Veronica 20:19.
versus 2:5,
    26:21.
VI 4:17, 5:1,
    16:3, 16:7,
    16:18, 16:22,
    17:2, 17:19,
    17:23, 18:5,
    18:6, 18:16,
    22:13.
victim 6:20, 8:15,
    23:5, 23:6,
    23:8, 26:17.
victim-related
    4:9.
victims 14:13,
    14:20.
view 23:13.
violation 15:23,
    25:9.
virtually 22:21.
virtue 14:8.
vocational 31:13,
    31:19.
voluntary 18:14,
    18:15, 19:2,
    20:1, 32:3.
vs 1:9.
.
.
< W >.
Waite 5:20, 5:21,
    5:23, 6:2, 6:10,
    6:20, 6:21, 7:9,
    7:14, 7:15, 8:9,
    9:17, 10:2,
    13:10, 19:18,
    23:25, 24:1,
    25:5.
waiver 30:22.
wanted 9:16.
ways 9:22.
Wednesday 3:13.
weeds 15:14,
    15:16.

weighed 6:21.
whatever 13:1.
whatsoever 23:7.
wheel 11:16.
whether 24:12,
    28:22.
whole 9:14.
whom 19:9.
will 5:7, 5:12,
    7:9, 14:4,
    14:10, 21:25,
    22:1, 28:5,
    29:22, 31:4,
    32:8, 32:10.
William 2:11.
William C.
    Brennan, Jr.
    1:37.
willingness
    14:12.
wish 14:13, 14:20,
    21:6, 30:14.
within 3:25, 15:8,
    30:6, 30:16,
    30:21.
without 4:5,
    19:12, 25:10.
woman 12:4.
word 12:11.
worse 24:16.
wrestled 10:15.
written 17:8,
    20:15, 20:25.
wrongful 12:19.
wrote 21:10.
.
.
< Y >.
year 2:20, 28:3,
    28:4, 29:10.
years 4:19, 6:8,
    6:25, 7:20,
    8:19, 8:22,
    11:22, 12:25,
    13:24, 15:22,
    17:25, 18:12,
    20:6, 27:2,
    27:3, 27:25,
    28:1, 28:3,
    28:6, 31:16.

young 5:23,
    22:14.